## KILE & THOMPSON *v.* TUBBS.

THE general rule is, that where a party enters, in good faith, upon a tract of land with color of title, under a deed purporting to convey the tract with specific boundaries, no person being in the adverse possession at the time, and he takes and holds actual possession of a part, *bona fide*, claiming title and possession of the whole tract described in the deed, he is deemed to have possession of the whole tract within the boundaries of the deed. This rule, however, cannot be held to apply to a case where a person in possession of a small tract, makes a conveyance of a large tract greatly exceeding his actual possession, when he has no color of title beyond his possession.

The State of California has no right to sell lands within her limits, to which she has no present or prospective title, by grant from the United States.

Kile v. Tubbs.

Whether this State has an inchoate title to lands, within her limits, called Swamp lands, depends entirely upon the question, whether they are Swamp lands, within the meaning of the Act of Congress of September 28th, 1850.

The State of California does not acquire a legal title to the swamp lands within her limits, until they have been certified to the State by the General Land Office, and a patent issued to the State therefor by the United States.

If this State sells land as swamp and overflowed, before the United States has issued its patent to the State therefor, the patent from the State has no other legal force except as a quitclaim from the State to the grantee of whatever interest or title the State may have to the lands therein described.

If the grantee, in a patent issued by this State, for land sold as swamp and overflowed, before the United States has issued to the State a patent therefor, bring an action to recover possession of the land, by virtue of his patent; and the defendant brings himself, in privity, with the source of paramount title, to wit: the United States, either as a preëmptioner under the laws of the United States, or otherwise, he has a right to show in evidence on the trial, that the land described in the patent is not swamp and overflowed, within the meaning of the Act of Congress; and if such shall appear to be the fact, plaintiff cannot recover.

The decision in the case of Doll v. Meador (16 Cal. 295) does not apply to lands sold and patented by the State as swamp and overflowed lands.

A had a house, corral, garden, and orchard on a tract of eighty acres of land, and claimed possession of the entire tract; but his actual possession did not extend beyond his improvements. B afterwards inclosed the entire tract with a fence, and put another house thereon. A then brought an action against B, to recover possession of the entire tract, and the defendant recovered judgment: held, that the judgment was erroneous in this, that A was entitled to judgment for the house, corral, garden, and orchard, of which he had the prior actual possession.

APPEAL from the District Court, Fifth Judicial District, San Joaquin County.

The facts are stated in the opinion of the Court.

*H. O. Beatty,* for Appellant.

It is a well-settled doctrine, that when an entry is made by one, under color of title, by a deed, his possession is deemed to extend to the bounds of that deed—though his actual settlement and improvements were on a small parcel of the tract. In such a case, where there is no adverse possession, the law construes the entry to be coextensive with the grant to the party, on the ground, " that it is his clear intention to assert such possession." (*Elliott* v. *Pearl,* 10 Peters, 443; *Barr* v. *Gratz,* 4 Wheat. 222, 223; *Fox* v. *Hus-*

Kile *v.* Tubbs.

*ton,* 4 Bibb. 559; *Thomas* v. *Harran,* Id. 563; and other authorities quoted in *Elliott* v. *Pearl.)* In *Prescott et al.* v. *Nevers et al.* (4 Mason, 330), Judge Story says.: " I take the principle of law to be clear, that when a person enters into land, under a claim of title thereto, by a recorded deed, his entry and possession are referred to such title; and he is deemed to have a seizure of the land coextensive with the boundaries stated in his deed, when there is no adverse possession."

The plaintiffs had a patent from the State of California, for the land sued for. Defendant was a mere naked trespasser, having neither title nor pretense of title, unless the quitclaim deed from DeVries is so called. He was in no condition to contest the patent from the State to plaintiffs. This point is fully decided by this Court in the case of *Doll* v. *Meador* (16 Cal. 330, 331).

*Budd* and *Carr,* for Respondent.

The introduction of evidence, by defendant, as to the condition and character of the land, was not error. Such evidence does not attack the patent either directly or collaterally.

The patent is valid, and conveys to the plaintiff whatever right the State may have had in the land, and no more; and if the State had none, it conveyed none, and did not profess to convey any. The Statute of April 21st, 1858, 200, Sec. 7, expressly declares, that a patent issued for swamp lands shall not have any other legal effect or force than a quit claim of all right, title, and interest on the part of the State.

The case of *Doll* v. *Meador* (16 Cal.) was in relation to a patent issued under the act of the Legislature, for the disposal of the 500,000 acres granted by Congress to this State. There are between that case and this, the following important distinctions:

1st. The patent in that case conveyed the title in fee simple. (Act of 1859, Sec. 4, Chap. 313.) In this, it is but a quitclaim of the title of the State, if any she had. (Stat. 1859, 200, Sec. 7.)

2d. In that case, the land had been granted to the State, and was to be selected by the State, under State laws. (Act of Congress, Sept. 4th, 1841.) In this, swamp and overflowed lands had been granted to the State, to be segregated under the direction

of the Secretary of the Interior, a United States officer. (Act of Congress, Sept. 28th, 1850.)

3d. In that case, the land had been selected for the State of California, by State officials, and the selection had been approved by the register and receiver of the United States land office. (Stat. 1859, Chap. 313.) In this, the selection of the land as swamp and overflowed, was made by the purchaser, and not by any State or United States official. (Stat. 1858, Chap. 235.)

4th. In that, a tribunal decided before the issuing of the patent on notice to all claimants, that the plaintiff was entitled to the patent. (Stat. 1859, Sec. 3, Chap. 313.) In this, no officer of the government, State or National, decided, judicially or otherwise, that the land was swamp and overflowed land. The acts of the State officials were merely ministerial, and even the discretion given to the Governor by the Act of 1858, Sec. 7, was taken away by the proviso of the Act of 1861, 252.

"If the land be not swamp and overflowed land, then the United States neither conveyed nor attempted to convey the same to the State. Respondent does not attack the patent, nor the action of the officers in issuing it. The patent is regular and regularly issued; but unless the land is swamp and overflowed land, the patent conveyed nothing; the State had nothing to convey. (*Summers* v. *Dickenson*, 9 Cal. 555; *Patterson* v. *Winn*, 11 Wheat. 380.)

The case of *Doll* v. *Meador* (16 Cal.) decides that a person having a mere naked possession, cannot attack directly or collaterally a conveyance, or attempted conveyance of land, made or attempted to be made by the sovereignty possessing the eminent domain. But, in this case, the United States, the sovereignty possessing the eminent domain, neither granted, nor attempted to grant, the land in controversy, unless it were swamp and overflowed land; neither did the State attempt to convey any greater interest than the State may have had. The ancient doctrine, as to the effect of a patent from the sovereign, does not apply to the patent under consideration. (*Summers* v. *Dickenson*, 9 Cal. 555.)

Plaintiffs do not claim that the State held the land in controversy, by right of eminent domain, but by grant from the United States; and it is difficult to see how the State could have had any

greater rights under the grant than any other grantee would have had.

The jury decided, not that no grant to the State had been made, but that the land was not within the calls of the grant.    If the State took no greater rights, under the grant from the United States, than a private person would have done, then a segregation or survey made by the State, gave the State no rights.    (*Smith* v. *United States,* 10 Peters, 335.)

Had the State brought suit for the land, the respondent could have shown that the land was not within the calls of the grant from the United States.    And how can a grantee from the State by patent, conveying merely a quitclaim of the right of the State to the land, acquire by such patent, any greater rights than the State itself possessed ?

CROCKER, J. delivered the opinion of the Court—NORTON, J. concurring.

This is an action to recover the possession of eighty acres of land.    The evidence shows that in 1859, one Stayton had a house, corral, orchard, and garden, on the tract in dispute, and resided in the house with his family, claiming a large tract of three hundred and twenty acres, which included the eighty acres in controversy. On the fourth day of April, 1859, while thus in possession, he with his wife executed and delivered a deed to one John Thompson, conveying to him the whole three hundred and twenty acres, and delivered the possession to the latter; and the present plaintiffs claim under Thompson, as also under a patent issued to them under the statutes of the State relating to swamp lands.    On the first day of March, 1861, Kile, one of the plaintiffs, leased the premises to one Gilmore, who occupied the house and grounds under the lease, until a short time before the commencement of this suit.    It seems that the plaintiffs, and those under whom they claim, inclosed all of the three hundred and twenty-acre tract, except the eighty acres in controversy, and all the actual possession they had of that was the house, corral, orchard, and garden.    But they claim to have had the constructive possession of the whole under the deed from Stayton, and under the swamp land certificate and patent. They claim to own the title in fee under the patent.

It seems that one Devries claimed some interest in the tract, under an unlocated Mexican grant; and he and the plaintiff Kile entered into an arrangement by which it was agreed, that he was to have the land if it should be included in the final survey of the grant; if not, Kile was to have it under his swamp land claim. Under this arrangement, Devries claimed to be in possession. The final survey of the grant, made in 1859, did not, however, include the land. Devries built a fence around the eighty acres in controversy, and furnished lumber to put another small house on it. He made several attempts to get possession of the old house and improvements, but failed. He conveyed his claim to the premises, to the defendant, November 2d, 1861; and one Medlin, also, made a conveyance to the latter, dated November 15th, 1861; and he went into the new house—built, it seems, by Medlin—with the lumber furnished by Devries. Defendant claimed also to hold the land as a preëmptioner, under the United States law.

At the trial, the plaintiff asked the Court to give the following instruction: "That a party entering upon land, under a deed describing it by metes and bounds—although he actually inclose or occupy only a small portion—is, in contemplation of law, in possession of the whole tract described in the deed; and if the jury believe that John Thompson entered upon the tract of land described in the complaint, under a deed from Stayton—intending to take possession of the whole tract—he was in possession of the whole, though he actually occupied but a portion; and if Thompson transferred his right and possession to plaintiffs, they, entering under such transfer, were in possession of the whole tract transferred, whether the transfer was by proper deed, or an assignment of a certificate of purchase." The Court refused to give the instruction, and this is assigned as error. The general rule seems to be, that where a party enters, in good faith, upon land, with color of title, under a deed purporting to convey the land with specific boundaries—no person being in the adverse possession at the time—and he takes and holds actual possession of a part, *bona fide*, claiming title and possession of the whole tract described in the deed, he is to be deemed to have the possession of the whole tract within the boundaries of the deed. In other words: in such case,

Kile v. Tubbs.

his possession is held to be coextensive with his deed. (*Rose* v. *Davis,* 11 Cal. 133; *Baldwin* v. *Simpson,* 12 Id. 560; *McCracken* v. *San Francisco,* 16 Id. 591; *Elliott* v. *Pearl,* 10 Pet. 443; *Barr* v. *Gratz,* 4 Wheat. 222; *Prescott* v. *Nevers,* 4 Mason, 330; *Keam* v. *Cannovan,* 21 Cal. 299.) This rule, however, cannot be held to apply to a case where a person in the possession of a small tract —the usual size of a farm—makes a conveyance of a large tract, greatly exceeding his actual possession, when he has no color of title beyond his possession. The right of possession cannot be extended by any such means. The instruction asked by the plaintiff does not state the rule upon this subject with that clearness and accuracy requisite in cases of this kind; and we would not, therefore, be justified in reversing the judgment because it was refused.

At the trial the plaintiffs introduced in evidence the patent from the State, issued under the statutes relating to swamp and overflowed lands. The defendant proved that nearly all of the tract in controversy was dry, arable land, well fitted for cultivation. The Court gave the following instruction asked for by the defendant: " If the land is not swamp and overflowed land, within the meaning of said act, then the plaintiffs acquired no right to the land by virtue of the patent from the State." There was no evidence that the land had ever been certified to the State, or any patent issued therefor from the United States, or from the General Land Office, as swamp land or otherwise. The plaintiff contends that the Court erred in giving this instruction, in admitting the evidence, and in overruling the motion for a new trial, on the ground that the verdict was against law and evidence. He contends that the decision of this Court in the case of *Doll* v. *Meador* (16 Cal. 295) fully determines this point in his favor.

The patent in that case was issued under the statutes of this State relating to the 500,000 acres of land granted to each State by the eighth section of the Act of Congress of Sept. 4th, 1841. (Wood's Dig. 744). It was issued under the provisions of the Act of 1859 (Stat. of 1859, 338), the fourth section of which provides, that " such patent shall vest in the grantee therein named a good and valid title, in fee simple, to the lands therein described." The act requires that the holder of the land warrant desiring a patent shall

give public notice of his application for the patent, and prove fully to the Register of the State Land Office the location of the warrant according to law; the survey of the land by the United States; that the location has been made or filed in the United States District Land Office, and has been made with the consent of the Register and Receiver of such Land Office; and all persons holding adversely are entitled to appear before the Register of the State Land Office, and contest the application for the patent. But the provisions of the statutes relating to swamp lands are entirely different.

The source of the title of the State to the swamp lands depends upon the Act of Congress of September 28th, 1850 (Wood's Dig. 745), the first section of which grants to the State of Arkansas the whole of the swamp and overflowed lands " made unfit thereby for cultivation." Sec. 2 makes it the duty of the Secretary of the Interior to make out an accurate list and plats of such lands and transmit the same to the Governor of the State, " and, at the request of said Governor, cause a patent to be issued to the State therefor; and on that patent the·fee simple to the said lands shall vest in the said State of Arkansas, subject to the disposal of the Legislature thereof." Sec. 3 provides " that in making out a list and plats of the land aforesaid, all legal subdivisions, the greater part of which is ' wet and unfit for cultivation,' shall be included in said list and plats; but when the greater part of a subdivision is not of that character the whole of it shall be excluded therefrom." Sec. 4 extends the provisions and benefits of the act to each of the other States of the Union.

The State of California has, by its legislation, attempted to sell and convey these lands in advance of any segregation thereof, or the issuing of certified lists or patents by the National Government; attempting, by *ex parte* proceedings, and often without any, or very insufficient proof, to determine, without any concert of action with the National Government, what lands she is entitled to under the Act of Congress. The Act of 1855 (Wood's Dig. 517) authorized the sale and patenting of such lands, without requiring any evidence whatever, not even the affidavit of the purchaser, showing that the tract sought to be purchased was of the character described in the Act of Congress. And the Act of 1858 (Stat. of

1858, 198) is of the same character.  By the amendments of 1859 (Stat. of 1859 340), the purchaser was required to state, in the affidavit made by himself, " that every forty-acre lot, or its equivalent subdivision, of the land sought to be purchased, is the greater part swamp or swampy, or subject to inundation at the planting, growing, or harvesting seasons, so as to endanger, injure, or destroy the crops, taking the average season for a reasonable number of years prior to the year 1850 as a rule of determination."  This is making the interested party the only witness on his own behalf.  The amendment to Sec. 10 also provides how " a contest for the certificate of purchase, or other evidence of title to the same tract of land," shall be tried.  It is doubtful, however, whether, under this section, a person in possession as a preëmptor under the laws of the United States, and claiming that the land is not swamp land under the Act of Congress, can appear and contest the claim of the purchaser under the State.  It is, apparently, confined to " a contest *for* the certificate of purchase or other evi-. dence of title."  If such is the proper construction (and we believe the Surveyor-General and Land Register of the State have so construed it), it follows that there is no provision of law by which the essential fact whether the land is swamp land, and whether the State has or ever will have any title to it, can be tried between conflicting and adverse claimants, or can be investigated or determined prior to the issuing of the patent; and if the patent, under such circumstances, is held conclusive upon adverse claimants, it follows that any man may be deprived of his land and improvements by any person who will take the oath prescribed, without any opportunity of having his rights tried in a Court of Justice.  A more plain and direct deprivation of property, " without due process of law," could hardly be found or imagined.

In 1861 (Stat. of 1861, 355) the Legislature passed a law appointing a Board of Commissioners, one of the provisions of which is that the County Surveyors of each county shall proceed to segregate the swamp and overflowed lands within their respective counties from the high lands, and make maps of the same, and transmit duplicates of such maps to the Surveyor-General; and also making it their duty to take such testimony as they may be able to procure,

that such lands are swamp and overflowed lands, and transmit the same to the Surveyor-General; and the Governor is required to transmit these maps and testimony to the United States Land Office at Washington. Sec. 26 of this act provides, that after such segregation, the purchaser, in making his affidavit, may omit the statement that the land is swamp land, as required by the Act of 1859. All these proceedings on the part of the County Surveyors are entirely *ex parte;* adverse claimants have no notice thereof, and have no right to appear and contest the same any more than before.

It seems that the Legislature became aware, that, under these *ex parte* proceedings, lands might be sold and conveyed that were not, in fact, swamp lands, within the Act of Congress, and which might not belong to the State—as several provisions are made, in different statutes, that in such case the holders of the certificates of purchase or patent might select other swamp lands in exchange therefor. (Stat. 1859, 180; Id. 1861, 6; Id. 1862, 476; Id. 1863, 597.) The Legislature have been equally careful that these *ex parte* proceedings shall not bind or conclude adverse claimants. Sec. 7, of the Act of 1859, 200, after providing for issuing a patent, adds this clause : " *Provided,* that neither the patent provided for in this section, nor the certificate provided for in the sixth section of this act, shall have any other legal effect or force, than as a quitclaim of all right, title, and interest, on the part of the State." So, too, all certificates of purchase or of location, issued under the laws of this State, are only made "*prima facie* evidence of legal title." (Stat. 1859, 227.) And only the same force and effect is given to certificates of purchase issued by the Register of the State Land Office, by the Statutes of 1863, 597, Sec. 17.

Taking into view the whole system of State legislation, regulating the sale of swamp lands, and all the provisions of the different statutes upon the subject, it is evident that the intention of the Legislature was, that certificates of purchase, and patents issued for swamp land, should not have a binding or conclusive effect upon adverse claimants, but should be only *prima facie* evidence of title, liable to be defeated upon proof that the land was not in fact swamp land within the Act of Congress. The statutes relating to the sale

Kile *v*. Tubbs.

and patenting of the 500,000 acres of land, under which the decision in the case of *Doll* v. *Meador* was made, differ so widely from the statutes relating to swamp lands, that that decision forms no proper guide in the present case.

The Act of Congress of September 28th, 1850, provides that the patent from the United States to the State, shall vest the fee simple to said lands in the State; and it may, perhaps, be doubtful whether any title vests in the State until such patent is issued. However this may be, as to lands that are unquestionably swamp lands, within the Act of Congress, it is evident that no right, title, or interest, can properly be deemed to have vested in the State, as to any but those lands undoubtedly swamp, until at least they have been segregated by the consent or action of the proper officers of the United States; and until that is done, as to lands not clearly swamp, *bona fide* claimants, in possession under the laws of the United States, have a right to prove the true character of the land, and that it is not swampy; and they are not concluded from so doing by a certificate of purchase, or a patent issued under the laws of this State.

It is clear that the State has no valid right to sell or convey land to which she has no vested or prospective right or title. Whether she has even a prospective or inchoate title to swamp lands, depends entirely upon the single question, are they swamp lands within the Acts of Congress? If they are not, neither the State nor its officers have any right, power, or authority, to sell or convey them. Nor has she, by her legislation, authorized the sale of lands, unless they are of that character. The first sections of the Acts of 1855 and 1858, only authorize the sale of "the swamp and overflowed lands belonging to this State," and her officers, acting under it, have no right, power, or authority, to sell and convey any other; and if they attempt to do so, they exceed their powers and jurisdiction, and their acts are therefore void.

This very question has been passed upon by this Court, in the case of *Summers* v. *Dickinson* (9 Cal. 554), which was concurred in by all the Justices, including Justice Field, who delivered the opinion in *Doll* v. *Meador*. In it they say that " the Legislature, by the Act of April, 1855, provided for a sale of these lands, and

29

authorized the Governor to issue patents in favor of persons pur-
chasing under this act.   In issuing patents, the Governor acted as
the agent of the State, under the powers conferred by the statute;
his authority extended only to such lands as were granted to the
State by the Act of September, 1850; and a patent issued by
him, for any land not embraced in this grant, would be void for
want of power to convey." The Court, in commenting on this
decision, in *Doll* v. *Meador*, say: "Undoubtedly a patent issued
by the Governor for any land not embraced in the grant to the
State would be void for want of power to convey.   *   *   *   Nor
do we question the further proposition, that the defendant might
have disproved the evidence of title furnished by the patent, by
showing that the land in question was not included in the Act of
Congress, or was within the exceptions contained in the Act of this
State.   We only annex to the proposition the qualification that to
do this, he must first have brought himself in some privity with the
common source of title."

A person who has, in good faith, settled upon a tract of public
land, as a preëmptioner under the laws of the United States,
acquires a prior right to purchase the land at Government price,
when the Government has made the proper surveys, and declared
such land open for entry by preëmptioners.   The interest in the
land thus acquired by his *bona fide* occupation and residence, and
his performing the acts required by the laws of the United States,
giving him such prior right to purchase, is of such a character as
the Courts will recognize and protect; and the Possessory Act of
this State was adopted for that very purpose.   We think these
facts, upon being proven, give a *bona fide* occupant and preëmpt-
ioner such a status; brings him in such privity with the common
source of title, to wit: the Government of the United States; as will
entitle him to prove that the land in question was not included in
the Act of Congress.   In the case of *Doll* v. *Meador*, the defend-
ants had let the time pass by within which, under the laws of the
United States, they could have procured the Government title;
and they were, for that reason, held to be strangers to the title; at
least until further action by the Government on their behalf.   In
this case, it appears that the plats of the United States surveys of

Kile *v.* Tubbs.

this land have not been sent to the proper Land Office; so that it is out of the power of the defendant to file his notice of claim to preëmption, or to enter and purchase the land under the United States laws; so he has done all in his power, and has lost no rights acquired under those laws.

Even if the holder of the State patent should recover the possession under his patent, if the defendant should afterward establish his preëmption claim and procure a title from the United States, he could then undoubtedly recover back the land, with the intermediate rents and profits. So that there can be no essential advantage to the patentees in postponing the trial of this question of fact, so essential to his right to the land; while a contrary rule would work with great hardship upon *bona fide* occupants of the land. If, however, the State shall hereafter procure the title to this tract, the plaintiffs can then maintain an action for the possession, and for rents and profits, upon proof of that fact and the patent.

In *Stoddard* v. *Chambers* (2 How., U. S., 284), it was held that the issuing of a patent is a mere ministerial act, which must be performed according to law; and if it be issued for lands reserved from sale by law, it is void. So, too, it has been held, that a grant from the State is to be considered void where the State had no property in the land granted, or where the officers had no power to receive the entry and issue the grant. (*Curle* v. *Barrel*, 2 Sneed, 63.) Where the law forbids the entry of the vacant land, in a particular tract of country, a grant for a part of such land is absolutely void; and that fact may be shown in ejectment. In such case, the subject matter is not within the jurisdiction or capacity of the executive officers, who therefore transcended their powers in issuing the grants. (*Stanwix* v. *Powell*, 13 Iredell, 312.) Where the State has no title to the thing granted, or where the Governor has no authority to issue the grant, if the defect appears on its face, it is absolutely void, and may be impeached collaterally in a Court of Law, in an action of ejectment. (*Winter* v. *Jones*, 10 Ga. 190.) A patent which issues from the General Government, to land which has been previously appropriated by the Government, and reserved from entry, is void. (*Hit-tuk-cho-me* v. *Watts*, 7 S. & M. 363; *Barcy* v. *Gamble*, 8 Mo. 88; *Perry* v. *O'Hanlon*, 11 Id. 585; *Wright* v. *Rutgers*, 14 Id. 585.)

The evidence in this case, shows that the plaintiffs had the prior actual possession of the house, corral, orchard, and garden, formerly occupied by Stayton; and there is no proof of any abandonment of the right acquired by such prior possession; and the verdict of the jury as to this portion of the premises is contrary to the evidence.

The judgment is therefore reversed, and the cause remanded for a new trial.