[No. 3104.]

## C. D. SEMPLE v. J. B. COOK.

DEFENSE IN EJECTMENT.—If, in ejectment, the answer is a general denial, the defendant may prove any fact going to show that the plaintiff had no right of entry at the time the action was commenced.

REVERSAL OF JUDGMENT ON FINDINGS.—A judgment will not be reversed on the findings alone, unless they show affirmatively that no such judgment could properly have been rendered.

CONSTRUCTIVE POSSESSION—LIMITATION OF ACTIONS.—If one who claims title under a deed to a large tract of land, enters upon it and erects a house, and acquires actual possession of a small part around his house, and constructive possession of the whole, and the owner of the true title afterwards enters on the same tract in another place claiming the whole, the constructive possession thus acquired by the one who first entered is overcome by the constructive possession of the true owner, so that the Statute of Limitations does not run in favor of the one who has not the true title.

IDEM.—If the holders of two hostile titles to the same tract of land are each in the occupation of a small portion within the exterior boundaries of the tract, the constructive possession follows the true title, and the Statute of Limitations does not run in favor of the holder of the invalid title, except as to his actual possession.

APPEAL from the District Court, Tenth Judicial District, Colusa County.

The plaintiff appealed.
The other facts are stated in the opinion.

*C. D. Semple and J. R. McConnell*, for the Appellant.

The doctrine that between two persons having equal badges of possession, he shall be deemed to be in possession who has the title—*i. e.*, possession as a legal fact shall follow the right—is too well established for controversy. (*Miller* v. *Shaw*, 7 Serg. & R. 143; *Royer* v. *Benlow*, 10 Serg.

& R. 305; Notes of Am. Ed. to *Nepean* v. *Doe* and *Taylor* v. *Atkyns*, 1 Smith's Lead. Cases, p. 637, *et seq.*)

But in the case at bar appellant Semple had the sole badges of possession. His original entry was, by virtue of his equity as grantee, lawful against the whole world, the Government alone possibly excepted, and even against the Government it was congeable or allowable; and after final action of the United States District Court, he had with the *indicia* of possession a perfect legal title, which remained paramount until the Jimeno patent issued.

Our proposition is, that the mere issuance of such patent could not, and did not as a legal fact, divest the possession thus vested. Such possession continued and became adverse to the title of those claiming under the Jimeno patent from the moment of its issuance.

The possession of Semple was not, for the reasons thus given, divested until by the actual entry of the defendant upon him in the year 1870.

The Statute of Limitations commenced to run against those claiming under the Jimeno patent, on the 18th day of April, 1863.

*Belcher & Belcher and W. F. Goad*, for the Respondent.

If the patent of the United States to Larkin and Missroon conveyed to them the legal title to the lot in controversy, it gave them also the possession of the lot, because up to that time it had never been in the actual possession of any one. No constructive possession could avail against the Government, and nothing was done to create a constructive possession subsequent to the date of the patent. (*Green* v. *Liter*, 8 Cranch, 248–50; *Barr* v. *Gratz's Heirs*, 4 Wheaton, 213; *United States* v. *Arredondo*, 6 Peters, 691; *Rust* v. *Boston Mill Corporation*, 6 Pick. 158; *Cresap* v. *Hutson*, 9 Gill, 270; *Hawk* v. *Senseman*, 6 S. & R. 21; *McDonald* v. *Schneider*, 27 Mo. 405; *Nepean* v. *Doe*, 1 Smith's L. Cases, 496.)

By the COURT:

The action is ejectment, and the defendant had judgment.

The record consists of a synopsis of the pleadings, which are in the usual form—the defendant pleading the general issue.

The findings are to the effect that in 1845 Pico, Governor of California, made the Colus grant to Bidwell, who, in 1850, conveyed it to Semple, the plaintiff. The grant was for two square leagues within exterior limits of six leagues. Semple entered under his deed within the limits of the general tract and claiming the whole tract. This entry was in March, 1850. He lived within the general tract at one place and another—built houses, two or three in number—there being at the time of his entry and occupation no one within the general tract except wild Indians.

In 1855 the title of Semple was confirmed by the United States authorities, and in February, 1861, the official survey was approved by the United States Court, and this survey embraces the lot in controversy; but the lot was never inclosed or occupied by any one except the defendant Cook, who entered in 1870. Cook derived his title to the lot from Larkin and Missroon, who held under a grant made in 1844 by Jimeno for eleven square leagues. This grant was confirmed by the United States Board of Land Commissioners in 1853, and the decree was affirmed first in the District Court in July, 1855, and subsequently, upon appeal, by the Supreme Court of the United States, at the December term of that year. In 1860 the final survey upon this decree of confirmation was pending before the United States District Court, and Semple intervened in that proceeding. In the following year (April, 1861) the survey was finally confirmed and approved by the court; Semple, the intervener, consenting in open court to its approval. The survey, as thus approved, embraced the lot in controversy, and in July, 1862, a patent thereon was issued by the United States.

It is claimed by the appellant that upon these findings

judgment should have passed for him. The theory upon which this position rests is, that the facts as found create a title in Semple by reason of the adverse possession held by him of the general tract within which the lot in controversy is situated, for a period of five years since the issuance of the patent upon the confirmation of the Jimeno grant. But this position is met and overthrown by the rule prevailing here as to the findings to be implied in support of the judgment. Under the general issue pleaded, the defendant was at liberty to prove any fact going to show that the plaintiff had no right of entry upon this lot at the time of the commencement of the action, and the judgment below in his favor will not be disturbed here, unless the findings be such as to show affirmatively that no such judgment could have been properly rendered. It may be true that at the time Semple entered in 1850 no one was living within the general tract except the Indians, and it may be conceded that so long as that condition of things existed the occupation by Semple of portions of the general tract may have amounted to a constructive possession of this lot. But it is clear that if afterwards the holders of the Jimeno title, which is shown upon the facts to be the superior title to the premises, entered into possession of the general tract, the constructive possession of Semple would be overcome by the constructive possession which would, upon the same principle, arise in their favor. It is not doubted that if the holders of two hostile grants to the same premises be each in occupation within the general lines of the tract, the constructive possession would follow the true title. As to whether there was such an entry by the Jimeno owners, made after Semple's original entry, the findings are entirely silent. We must presume in aid of the judgment that such was the fact. It is useless to come here to seek a reversal of a judgment upon the findings alone, unless they actually negative all the other facts involved by the pleadings and which *might* exist consistently with those found, or unless it distinctly and affirmatively appears that the facts as found constitute *all* the facts found in the case.

It results that the judgment must be affirmed, and it is so ordered.

Mr. Justice BELCHER, having been of counsel, did not sit in this cause.

[NOTE.—The foregoing case was decided at the October term, 1872, when Mr. Justice Belcher was on the Bench, but by some oversight was not reported. The point of practice decided comes under the Practice Act before the adoption of the Codes.—REPORTER.]