[No. 18053.    Department Two. — February 24, 1893.]

## MARGARET McCORMICK, Appellant, *v.* FREDERICK SUTTON et al., Respondents.

Town Site Patent — Mineral Lands. — A patent to a town site conveys a perfect title in fee, except as to such land as was known to contain valuable mines before the issuance of the patent.

Id. — Discovery of Mineral before Improvement of Lot. — Where a town site patent has been issued, and a deed to a lot thereof has been regularly granted by the town authorities to an individual claiming it, the deed carries to the grantee a perfect title, where no mine has been discovered, and the land was not known to be mineral at the date of the patent; and the discovery of a mine after the execution of the deed, and

before the occupancy of the lot for residence or business purposes, will not give the mining claimant the right to the property as against the grantee under the town site.

ID. — LOCATION OF MINING CLAIM — PATENTED LAND. — An attempted location of a mining claim upon a lot, the title to which has passed into private ownership by patent from the United States, is invalid.

ADVERSE POSSESSION — CONSTRUCTIVE POSSESSION — RIGHTS OF OWNER IN FEE — ENTRY OF INTRUDER UNDER WRITTEN INSTRUMENT. — Where the owner of the true title to land is in possession thereof, the constructive possession follows his title, except as to that part of the land which is in the actual adverse possession of an intruder, and the latter cannot acquire constructive adverse possession against the owner in fee by entry under a written instrument.

APPEAL from a judgment of the Superior Court of Tulare County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Wheaton, Kalloch & Kierce,* for Appellant.

*F. W. Street,* and *J. F. Rooney,* for Respondents.

McFARLAND, J. — This is an action to quiet title to a piece of land described as lot 50, in a certain block in the city of Sonora, county of Tuolumne. The defendants filed separate answers, and each claimed title to a large portion of said lot by virtue of an alleged location and ownership of a quartz-mining claim, called the San Guiseppi Quartz Mine; and defendant Sutton further averred that he had been in the adverse possession of that portion of said mine which is embraced in said lot 50 for more than five years before the commencement of the suit, and pleaded the statute of limitations. Judgment went in the lower court for the defendants, and the court decreed that Sutton was entitled to the possession of all that part of said lot 50 which was included within the said alleged mining claim. Plaintiff appeals from the judgment, and from an order denying a new trial.

It appears from the findings that on March 24, 1874, the government of the United States issued its patent of the town site of the city of Sonora to the trustees of said city. Said lot 50 was a part of said town site, and

was conveyed by the said trustees on the 6th of August, 1874, to one Oliver Cowan, and by several mesne conveyances the title under the said town site patent to said lot 50 passed from said Cowan to the appellant before the commencement of this action.

About nine years afterwards, to wit, in January, 1883, the respondent Sutton and one Gerlach undertook to locate a certain quartz-mining claim, generally known as the Guiseppi.  They posted and recorded a notice, claiming fifteen hundred feet along a certain quartz ledge, with three hundred feet surface ground on either side, properly designated its boundaries, and since then have done sufficient work within said boundaries to comply with the laws of Congress upon the subject.  The surface location included a large part of lot 50.  The apex of the vein located was outside of said lot 50, but the vein in its dip extended under the surface ground of said lot.  Gerlach afterwards conveyed his interest to Sutton, and the respondent Halsey claims the right of possession, under a contract with Sutton.

It is not entirely clear upon what theory the court below decided the case in favor of respondents.  It is true that there is a finding to the effect that Sutton held the mining claim adversely for more than five years, and counsel for respondent in some parts of his brief seems to found his right upon such adverse possession; but some of the findings of the court and arguments of respondent seem to go upon the theory that the town site patent did not convey any mines that might be in the land, although not discovered until after the date of the patent of the town site.  The court also found that the said Cowan, the original grantee from the town authorities, did not occupy said lot 50 as a residence, or as a place of business, or for any purpose; and from a quotation made by counsel for respondent from the opinion of the court in *Deffeback* v. *Hawke*, 115 U. S. 392, and quoted in *Richards* v. *Dower*, 81 Cal. 44, it would seem that both court and counsel were of opin-

ion that mines discovered within the patented town site
before the occupation of a lot for business or residence
purposes could be held against the grantee from the
town site, although not discovered until after patent to the
town site had issued. If the judgment of the court went
upon any such theory, it is sufficient to say that the law
is clearly established to be, that a patent to a town site
conveys a perfect title in fee, except as to such land as
was known to contain valuable mines before the issuance
of the patent. (*Smith* v. *Hill*, 89 Cal. 122, and cases there
cited; *Deffeback* v. *Hawke*, 115 U. S. 392; *Davis* v. *Weib-
bold*, 139 U. S. 507; *Richards* v. *Dower*, 81 Cal. 44.)    The
expression referred to in the opinion in *Deffeback* v.
*Hawke*, 115 U. S. 392, is as follows: "A mine is not re-
served unless it is not only known, but known to be
valuable, at the date of the patent, or discovered to be so
before the occupation or improvement of the land con-
taining them for residences or business under the town
site title." It seems to be contended that the meaning
of this expression is, that although a town site patent
may have issued, and a deed to a lot thereof may have
been regularly granted by the town authorities to an indi-
vidual claiming it, before any known mine had been
discovered, still, if a mine had been discovered before
the occupancy of the lot for residence or business pur-
poses, then the newly discovered mine would hold as
against the grantee under the town site. But this is
clearly not so. In *Deffeback* v. *Hawke*, 115 U. S. 392, the
suit was commenced by the holder of a mining claim
which had been entered at the land-office, and no patent
had issued for the town site. The defendants in that
case claimed that although they had no patent under
the town site, still, they had occupied the lot for business
purposes before the location of the plaintiff's mine, and
therefore they claimed that their right of possession was
superior to that of the mine claimant. It was admitted,
however, in that case, that the land was known to be
valuable mineral land before its occupation for business
or residence purposes, and therefore the court held that

the right of the owners of the mine was superior to that of the defendants; and the opinion of the court can be construed to mean nothing else than this: that when a patent to a town site has issued, and a deed made to a lot-owner, the latter will hold as against any claimants of a mine discovered subsequent to his original occupancy of the lot for business or residence purposes. But when a patent has issued to a town site, a deed from the town authorities of a town lot carries to the grantee a perfect title, where no mine had been discovered and the land was not known to be mineral at the date of the patent. (*Davis* v. *Weibbold*, 139 U. S. 507.) And the regularity of the conveyance from the authorities of the town site to the claimant of a town lot cannot be afterwards questioned collaterally. In the case at bar, lot 50 was not known to contain a valuable mine at the date of the patent; and therefore the respondents obtained no title to any portion of the lot by virtue of the attempted mining location, made nearly nine years afterwards.

This leaves only the question of adverse possession to be disposed of. Most of the work done by respondents upon their asserted mining claim was done outside of lot 50. A small amount of work was done underground, within the boundaries of said lot 50; and there was an actual occupancy of only a small portion of the surface of said lot 50 by the respondents. They had an arastra there, and a dump-pile, although it does not appear how much of the dump-pile was made within five years before the commencement of the suit. There may, also, have been an occupancy of some other small portions of the lot. But respondents contend that, having located their mine covering a large portion of lot 50, and having continued to work on some part of the general location, the work outside of lot 50 gave them constructive possession of all of lot 50 within the lines of their mining location. But we do not think that this contention can be maintained. At the time of the attempted location of the mining claim, lot 50 was no longer public

land of the United States, but had passed into private ownership; and the attempted location of a mine upon said lot in the manner prescribed for the location of mines on the public domain was invalid. Moreover, the appellant and her grantors were themselves, during the whole time, in possession of the whole of lot 50, except such parts thereof as were actually occupied by respondents, having it inclosed with a fence, and using it for pasturage. If the findings of the court can be construed as finding that they were not thus in possession, they are not, as to that subject, justified by the evidence. The testimony of James McCormick clearly shows that there was such possession on the part of plaintiff and her grantors, and there is no evidence contradicting it. Moreover, respondents' counsel admits such possession, and in his brief says: "It is true that appellant, during such time, was in the general possession of lot 50." If it be admitted, therefore, that, as claimed by appellants, the notice of location of the mining claim was a *written instrument* within the meaning of section 322 of the Code of Civil Procedure, and would carry constructive possession to the boundaries designated in it, still, that doctrine only applies to unoccupied land of which there is no possession in the true owner; but where the owner of the *true title is also in* possession, the constructive possession follows his title, except as to that part of the land which is in the *actual* adverse possession of the intruder. (*Semple* v. *Cook*, 50 Cal. 29; *Labory* v. *Los Angeles Orphan Asylum*, *ante*, p. 270, and cases there cited.) Therefore, in the case at bar, the appellant having the true title, and being in general possession of lot 50, her constructive possession went to the whole lot, except the portions actually occupied by the respondents. And respondents cannot be held to have an adverse possession of any portion of lot 50, except those parts thereof of which they were in the actual possession; and the judgment of the court that they were entitled to the possession of all of lot 50 embraced in their mining location was erroneous. These views make it un-

necessary to notice any other points made in the case. (Certain records of judgments which were offered in evidence by respondents, but excluded by the court, are printed in the transcript; but they are so printed improperly, and can have no consideration.)

Judgment and order reversed, and cause remanded for a new trial.

DE HAVEN, J., and FITZGERALD, J., concurred.