[No. A019487. Sixth Dist. Nov. 13, 1985.]

ROBERT W. THOMSON et al.,
Plaintiffs, Cross-defendants and Appellants, v.
STEVE DYPVIK et al., Defendants, Cross-complainants and Appellants;
FRED W. STEINER et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I, II, III, IV, V, VI, VII, and VIII.

330

COUNSEL

Louis A. Highman, Bruce J. Highman, Campbell, Warburton, Britton, Fitzsimmons & Smith and William T. Brooks for Plaintiffs, Cross-defendants and Appellants.

Johnston, Miller & Giannini and Faber L. Johnston for Defendants, Cross-complainants and Appellants.

L. Roy Harper, in pro. per., and Donald E. Davis for Defendants and Respondents.

OPINION

TURRONE, J.*—This case involves a dispute between adjoining landowners focusing on the rights in and title to a dirt roadway named Twin Falls Creek Road (sometimes referred to as the road).

The defendants (respondents and cross-appellants) are neighboring landowners in the foothills of the southern Santa Cruz Mountains west of Morgan Hill, between San Jose and Gilroy. Plaintiffs' (appellants') land lies

---

*Assigned by the Chairperson of the Judicial Council.

along either side of the lower reaches of Twin Falls Creek at and above its confluence with Llagas Creek. The defendants' property is all upstream along Twin Falls Creek, beyond the land of plaintiffs.

Each creek has a narrow, unimproved, dirt road which roughly parallels it. Twin Falls Creek Road, following its namesake, provides access for all parties to this litigation; beginning at Casa Loma Road it first passes over the lands of plaintiff and thereafter, in a generally westerly direction, upstream to defendants. Once the road reaches the land of the defendants there is no further dispute since all defendants' parcels are contiguous and there is no litigation amongst them. The road deadends into Casa Loma Road, just downstream of the confluence of the two creeks, and Casa Loma Road leads out of the area.

Plaintiffs and appellants in this case are Robert W. and Maudie R. Thomson (Thomson), Robert C. and Jeanne C. Wrede (Wrede), Gladys A. Stalberg, Marie Rogers, and Austen D. Warburton.

Defendants and respondents are Fred W. and Dorothy E. Steiner (Steiner), L. Roy and Elizabeth M. Harper (Harper), Elroy and Diane Fellman (Fellman), Steven and Lynn Dypvik (Dypvik), the Martinezes, Jarretts and the Matsumotos. The Dypviks are also cross-appellants.

Plaintiffs all traced their title back to patents issued by the United States Government for lands lying entirely within a single government survey section, section 19, township 9 south, range 2 east, Mount Diablo base and meridian. Defendants all trace their properties back to similar government land patents issued to different individuals by the United States Government, covering property lying in sections 24 and 25 of the adjacent range to the west.

Since the grant of these patents to the original patentees, the parcels have been conveyed in various configurations; however, no one person has ever simultaneously owned parcels of land in both section 19 of township 9 south, range 2 east, where plaintiffs' lands lie, and sections 24 and 25, township 9 south, range 1 east, where defendants' lands lie. Thus, other than the United States Government, there has been no common grantor.

On January 4, 1977, plaintiffs filed an action seeking to quiet title to their lands and for injunctive relief. This complaint was amended on February 28, 1978 and again on February 26, 1979 to include defendants Jarrett. Their suit sought to preclude defendants from using the road, some one-half to one mile in length, beginning at its intersection with Casa Loma Road, generally westerly across plaintiffs' properties, to the lands of the

defendants. They also included actions for trespass and water rights, neither of which are issues on this appeal.

Apart from defendants Jarrett and Martinez, whose defaults were taken on October 29, 1979 and against whom judgment was entered on July 2, 1981, each of the defendants ultimately answered. Defendants Matsumotos, Dypvik, and Harper also cross-complained to quiet title. The thrust of these pleadings asserted an easement gained by prescriptive right, implication or necessity. Also, all answering defendants, except the Steiners, asserted in their answer and/or cross-complaint an easement for a right-of-way by grant as follows: "A nonexclusive right-of-way for ingress and egress and the installation and maintenance of public utilities over a strip of land 60 feet wide, the center of which is the centerline of the now-existing road . . . ." Only the defendants Steiner did not assert an easement by grant based upon a "wild" deed.

Prior to trial, plaintiffs reached a settlement with defendants Matsumotos, thereby removing them from this litigation.

All parties waived jury and the matter was tried by the court beginning on June 29, 1981.

After receiving conflicting testimony as to the width of Twin Falls Creek Road, the court viewed the scene and determined the defendants had, together with their predecessor in interest, been in the exclusive and adverse use of 15 feet, which use had been open, notorious, continuous, uninterrupted, and hostile to the true owners for more than 5 years. Accordingly, the court awarded the defendants a nonexclusive easement for ingress and egress over a strip of land 15 feet wide, the center line of which was the center line of Twin Falls Creek Road.

There are two appeals and one cross-appeal from this judgment. One appeal is by one set of plaintiffs/appellants (Thomson, Wrede and Stalberg); the other is by another set of plaintiffs/appellants (Rogers and Warburton). We will refer to the first one as the "Thomson appeal" and the second as the "Rogers appeal." Defendants/cross-complainants Dypvik have cross-appealed.

FACTS

Twin Falls Creek Road runs from Casa Loma Road sequentially through the lands of plaintiffs Rogers and Warburton (sister and brother, hereafter referred to collectively as Rogers), Thomson, Stalberg, Wrede, then back onto the lands of Rogers, which is "L" shaped, and then finally into the

lands of defendants Matsumotos, Dypvik, Harper, and Fellman, sequential-
ly. At some point while the road is still traversing across the property of
Rogers, after having first crossed over the lands of the other plaintiffs, a
side road leaves Twin Falls Creek Road and goes to the property of de-
fendants Steiner. There is no other way to get to the defendants' property
except by using Twin Falls Creek Road.

*A. Defendants' Title*

The claims of title for respondents Harper, Fellman, defendants Matsu-
motos and cross-appellants Dypvik, were from a common predecessor in
interest, Harry Harris. Harris had acquired title to approximately 400 acres
on July 27, 1959, from the Abinante Family, the deed containing no ref-
erence to any right-of-way over what was later to become the plaintiffs'
parcels; however, there was an old-time existing road from the Harris par-
cel, easterly out to Casa Loma Road, across what is now the plaintiffs' land.
Harris testified the road was there when he purchased the property, as were
a couple of fairly old bridges that he had to repair on occasion. He used the
property to get to his land, he graded the road on two or three occasions
and performed necessary maintenance for the road as the need arose, and it
was his belief that it was a public right-of-way; "he never questioned it for
a second." Harris further testified that his property had a very good home
upon it which he believed to be between 35 and 40 years old at the time he
occupied the land. Another witness testified that the home could be as old
as 80 years at the time Harris owned the property.

In 1963 Harris proceeded to divide his land into four parcels.

1. One parcel was sold by Harris to defendants Harper in August 1963.
The Harpers retained a portion of the property for themselves, but on the
same day they acquired the land they sold a portion to Lawrence and Roselta
Wilson. The Wilsons used the road since 1959, before purchasing the prop-
erty, and built a home on the parcel in approximately 1967. When Mr.
Wilson died, in 1970, Mrs. Wilson retained title until May 1972, when she
gift-deeded the property to James and Erica Wilson. They in turn sold the
property to the defendants Fellman in May 1974. Fellman was familiar with
the road for over 20 years, having begun using the road in 1959 as a guest
of his friend Wilson. Fellman first learned of plaintiffs' claim when the
lawsuit was filed.

2. As indicated earlier, the Harpers retained a portion of the property
they acquired from Harris. They used the road on a frequent and regular
basis, maintaining their claim to use it by virtue of the grant they had
received. Mr. Harper made such an assertion publicly at a planning com-

mission meeting while plaintiff Thomson was in attendance. The Harpers had been using the road almost daily since 1959. They built their first home on the property in 1971 and at the time of trial they had three homes on the property, all occupied by members of their family.

3. In 1963 a second parcel was sold by Harris to Jackson, Crouch and Fisher (Fisher), who in turn sold the property to the Weisels in May 1964. Fisher used the road. Mr. Weisel testified they used the property only for picnics about four times a year. The chain of title thereafter was: Weisel to Valley Cedar Products in June 1968, Valley Cedar Products to Smith in January 1971, and Smith to Robertson in February 1972. In July 1973, Robertson sold this parcel to defendants Dypvik. An old homestead with remnants of a garden, fruit trees and a house dating back to pre-1900 was located on this property. The road had been used for an old mercury mine located on this property during the 1800s. Mr. Dypvik had a conversation concerning their right to use the road with plaintiff Thomson before they purchased this parcel and continued to use the road without seeking permission from anyone. The Dypviks built a home and a large pond upon the property and resided there for a number of years. Later the Dypviks purchased a smaller parcel to the west of this parcel (see par. 6, immediately below).

4. Another parcel, which had a home upon it, was sold to defendants Matsumotos in May 1965 (they settled with plaintiff). In 1959, this home was believed to be 25-30 years old.

5. Each deed, starting with Harris and running to the above defendants, provided for a nonexclusive 60-foot wide easement for ingress and egress and the installation and maintenance of public utilities, the center of which was the center of Twin Falls Creek Road.

6. Harris sold the fourth parcel to Hernandez, who sold it to Kaufer who finally conveyed to Dypvik. It was a smaller parcel than the one he acquired from Robertson and was contiguous with it, however, the road did not pass through this parcel. Harris used a different real estate firm for the sale to Hernandez, which might explain the fact that the 60-foot right-of-way specified in the other deeds did not appear in this chain of title until Hernandez conveyed to Kaufer.

7. After first securing the advice of an attorney regarding the existence of an easement enabling them to reach the property, the defendants Steiner purchased their land in March 1963 from the Bohnetts and used the road on a regular basis. The Steiner deed contained no language regarding a right-

of-way. The remains of an old house and barn found on Steiner's property were described in a government survey done in 1871.

### B. *Plaintiffs' Title*

The Stalbergs bought their property in October 1961, at which time it had a small cabin and barn on it. Later they built a home on the property where Mrs. Stalberg currently resides.

The Thomsons purchased eight acres in August 1963, and in January 1964 they purchased two adjoining acres from Wrede's predecessor in interest. Since August 1973, they have lived full time in a house they built on the property.

The Wredes purchased their property in 1969 and have constructed a cabin upon the property which they use on weekends.

In March 1975, Warburton and Rogers purchased their property and visit it regularly on weekends.

### C. *History of Road*

Twin Falls Creek Road, formerly known as Stone Sledge Road, has been in existence and delineated on an official recorded government map for over 100 years before the complaint was filed in this case and many years before the United States Government first granted patents to the parties' predecessors in interest. The road is also portrayed in a 1953 U. S. Geological Survey Map. Thus, official United States government maps have depicted the road as passing through the lands now owned by plaintiffs, since at least 1875. Uncontradicted testimony was received that the road had a reputation for having been in existence for many, many years.

The road provides the only access to the lands owned by the defendants and all defendants testified they used the road without obtaining permission, under a claim they had the right to do so. Plaintiffs were aware the defendants were using the road.

DISCUSSION

I-VIII*

. . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 329.

## IX. Color of Title

■ Adverse possession is a means of acquiring title to property after a period of time by continued possession. The possessor must claim the property under a mere claim of right or under color of title. This latter type of adverse possession may rest upon a deed which purports to convey the property, but which is defective. If the person in possession has color of title and acts in good faith, he may be deemed in possession of the full bounds of the deed even though his actual possession is only on a small portion of the parcel. ■ Cross-appellants Dypvik argue that Civil Code section 1007[4] makes this principle also applicable to easements. We have not found a case discussing this precise issue.

Before examining this attempt to apply the color of title concept to easements, let us briefly review some general principles of the law of real property.

■ Historically, there is an important difference in the technical terms "adverse possession" and "prescription." They "differ from each other almost exclusively in the kinds of land interests acquirable under the two processes. Adverse possession concerns itself chiefly with the acquisition of an estate in fee simple absolute, but is a term also applied to the acquisition of *possessory* interests of more restricted duration. Prescription, on the other hand, concerns itself wholly with the acquisition of what are called 'rights in the land of another,' such as easements . . . ." (7 Powell, The Law of Real Property (1981 ed.) ¶1012 [2][b] pp. 91-7–91-8, [fns. omitted, italics added].) Thus adverse possession refers to *title* acquired by continuous *possession* of another's land for the required statutory period of time, while prescription generally refers to *the right to use* another's land acquired by the use of same for the same period.

■ While the conduct required for each process is generally the same, there are a number of differences, the most important of which are that interests claimed by prescription do not require the need for an exclusive use and are much more closely tied to the hostile conduct of the party making the claim. Thus, the *right to use* property of another gained by prescription is measured by the actual use made of that property *by the*

---

[4]Civil Code section 1007 states: "Occupancy for the period prescribed by the Code of Civil Procedure as sufficient to bar any action for the recovery of the property confers a title thereto, denominated a title by prescription, which is sufficient against all, but no possession by any person, firm or corporation no matter how long continued of any land, water, water right, easement, or other property whatsoever dedicated to a public use by a public utility, or dedicated to or owned by the state or any public entity, shall ever ripen into any title, interest or right against the owner thereof."

*claimant,* whereas the *title* obtained by adverse possession is focused on the *exclusive possession* of the premises.

■ In either instance, to gain title or use it must be shown that the land of another was possessed or used for a period of five years, under a claim of right and in a manner which was open, notorious, and hostile to the owner of the land in 'question.

■ Where an adverse possessor bases his claim upon a written instrument or judgment, if the instrument or judgment confers complete and full ownership, the fact of his possession and the other evidence satisfying the elements discussed above are immaterial. However, where they only create an appearance of title and do not actually confer title, the law refers to the possessor as having "color of title." (*Kile* v. *Tubbs* (1863) 23 Cal. 431.)

Possession under color of title differs from a mere claim of right, in that a greater burden is placed on the claimant in possession under a mere claim of right. (Code Civ. Proc., § 325.)[5] ■ Relevant to our discussion, "where a party enters, in good faith, upon land, with color of title, under a deed purporting to convey the land with specific boundaries—no person being in the adverse possession at the time—and he takes and holds actual possession of a part, *bona fide,* claiming title and possession of the whole tract described in the deed, he is to be deemed to have the possession of the whole tract within the boundaries of the deed." (*Kile* v. *Tubbs, supra,* at p. 436, original italics; *Owsley* v. *Matson* (1909) 156 Cal. 401 [104 P. 983]; *Christy* v. *Spring Valley W. W.* (1892) 97 Cal. 21 [31 P. 1110].) This color of title concept is provided for in California Code of Civil Procedure sections 322 and 323.[6]

---

[5]Code of Civil Procedure section 325 states: "For the purpose of constituting an adverse possession by a person claiming title, not founded upon a written instrument, judgment, or decree, land is deemed to have been possessed and occupied in the following cases only: [¶] 1. Where it has been protected by a substantial inclosure. [¶] 2. Where it has been usually cultivated or improved. [¶] *Provided, however,* that in no case shall adverse possession be considered established under the provisions of any section or sections of this Code, unless it shall be shown that the land has been occupied and claimed for the period of five years continuously, and the party or persons, their predecessors and grantors, have paid all the taxes, State, county, or municipal, which have been levied and assessed upon such land." (Original italics.)

[6]Code of Civil Procedure section 322 states: "When it appears that the occupant, or those under whom he claims, entered into the possession of the property under claim of title, exclusive of other right, founding such claim upon a written instrument, as being a conveyance of the property in question, or upon the decree or judgment of a competent court, and that there has been a continued occupation and possession of the property included in such instrument, decree, or judgment, of some part of the property, under such claim, for five years, the property so included is deemed to have been held adversely, except that when it consists of a tract divided into lots, the possession of one lot is not deemed a possession of

■ Clearly the doctrine of color of title has relevance in connection with acquiring title through adverse possession. (3 Witkin, Summary of Cal. Law (8th ed. 1974) Real Property, §§ 55, 56, pp. 1817-1819.) However, it has no relevance in the prescriptive easement context to extend the area of use. Historically, color of title enabled an adverse *possessor* to gain legal title to more land than he actually occupied (Code Civ. Proc., § 322); but the extent of a prescriptive easement, on the other hand, was determined solely by actual use, not constructive use. In this regard, Civil Code section 806 follows common law tradition when it states "[t]he extent of a servitude is determined . . . by the nature of the enjoyment by which it was acquired."

■ Thus, all defendants' prescriptive rights are limited to the actual use of the easement during the statutory period, determined below to be 15 feet. (*Twin Peaks Land Co.* v. *Briggs* (1982) 130 Cal.App.3d 587 [181 Cal.Rptr. 25].)

There is neither statutory nor case law authority justifying the expansion of a prescriptive easement beyond the portion actually used based on color of title.

Cross-appellants and respondents nevertheless contend that Code of Civil Procedure section 322 should apply to prescriptive easements. We have examined the cases and find no authority to support this contention. The defendants argue that *Knight* v. *Cohen* (1907) 7 Cal.App. 43 [93 P. 396], confirms the applicability of Code of Civil Procedure section 322 to right-of-way easements. They have misread the case. It is cited as support for a proposition which the case simply does not address. The court in *Knight* expressly stated that "[t]he deed is of no consequence so far as defining the extent of the right, its only function being to furnish a basis for the claim, the extent of which is measured by actual occupation and use." (*Id.,* at p. 48.)

Defendants, and the trial judge in his amended memorandum decision dated November 23, 1981, place reliance on *Wheatley* v. *San Pedro etc. R. R. Co.* (1915) 169 Cal. 505 [147 P. 135]. However, *Wheatley* is strictly

---

any other lot of the same tract."

Code of Civil Procedure section 323 states: "For the purpose of constituting an adverse possession by any person claiming a title, founded upon a written instrument, or a judgment or decree, land is deemed to have been possessed and occupied in the following cases: [¶] 1. Where it has been usually cultivated or improved; [¶] 2. Where it has been protected by a substantial inclosure; [¶] 3. Where, although not inclosed, it has been used for the supply of fuel, or of fencing-timber for the purposes of husbandry, or for pasturage, or for the ordinary use of the occupant; [¶] 4. Where a known farm or single lot has been partly improved, the portion of such farm or lot that may have been left not cleared, or not inclosed according to the usual course and custom of the adjoining country, shall be deemed to have been occupied for the same length of time as the part improved and cultivated."

an adverse possession case. It describes how an individual can obtain title by adverse possession to a greater portion of property than that actually occupied, by using the doctrine of color of title. There was no issue of prescriptive easement or the effect of color of title on a prescriptive easement. *Wheatley* did nothing to expand the statutory meaning of California Code of Civil Procedure sections 322 and 323 to include prescriptive easements.

The intent of those two sections can readily be seen on the face of the statutes themselves. Both speak of "occupation" and "possession" of property under color of title; an easement, however, is never occupied or possessed, it is used.[7] If the Legislature had wanted these sections to apply to use as well as occupation and possession, they would have addressed this concept and included it within the statute.

We note that even if we were to apply the law of adverse possession under color of title to these facts, as urged, the result would be the same. If an adverse possessor under color of title occupies a part of the land and the true owner occupies another part of the same tract, the courts have held "[i]t is not doubted that if the holders of two hostile grants to the same premises be each in occupation within the general lines of the tract, the constructive possession would follow the true title." (*Semple* v. *Cook* (1875) 50 Cal. 26, 29; see also *Labory* v. *Orphan Asylum* (1893) 97 Cal. 270, 273 [32 P. 231]; *McCormick* v. *Sutton* (1893) 97 Cal. 373, 378 [32 P. 444].)

 If we were to inappropriately apply the adverse possession by color of title rule to this case, the defendants' purported color of title to a 60-foot easement plus actual use of only 15 feet, if no other facts existed, would give rise to constructive use of the entire 60 feet. However, the plaintiffs in this case simultaneously used not only the same 15 feet of the traveled portion of the roadway, but also portions of the 60 feet outside of the existing roadway. Accordingly, even if we applied the adverse possession rules relating to color of title the constructive use would follow the true title, the plaintiffs.

No statutory or case law exists justifying the expansion of a prescriptive easement beyond the portion actually used based on some purported color of title. The trial court's finding of fact recites that the defendants use of the roadway was "under color of title." The amended judgment makes no

---

[7]We also note that these sections are part of chapter 2 of the Code of Civil Procedure, a chapter dealing with adverse possession and not easements. We also observe that there are 13 code commissioner notes dealing only with adverse possession under color of title and no notes dealing with acquiring an easement.

reference to "color of title" or to the easement being a prescriptive easement. We agree with appellants that this creates an ambiguity in the meaning of the judgment. Paragraph 7 of the findings recites all the elements necessary for a prescriptive easement. It is clear a prescriptive easement was intended in the amended judgment. The judgment is therefore amended to describe the easement as gained by prescription. The findings of fact are herein ordered revised deleting all reference to color of title, and the amended judgment is further amended to state specifically that the defendants do not have a 60-foot wide easement.

## X. Disposition

We herein modify the findings and judgment below in the following manner:

1. Conclusion of law 2 and the judgment are amended to correctly describe the easement to reflect "Range 1 East" rather than "Range 1 West."

2. The judgment of September 3, 1982, is also amended to describe the easement as gained by prescription and to specifically state that defendants Harper, Fellman, and Dypvik, do not have a 60-foot wide easement.

3. The findings of fact are revised, deleting all references to color of title.

As so amended the judgment is affirmed. All parties shall bear their own costs on appeal.

Agliano, Acting P. J., and Brauer, J., concurred.