[Civ. No. 46284. First Dist., Div. One. Feb. 25, 1982.]

TWIN PEAKS LAND COMPANY, INC., Plaintiff and Respondent, v.
BILLY LEO BRIGGS, Defendant and Appellant.

**COUNSEL**

Eugene Epstein and Cominos, Shostak & Epstein for Defendant and Appellant.

Carnazzo, Herendeen & Bryan for Plaintiff and Respondent.

**OPINION**

**LEVINS, J.***—Respondent obtained a judgment against appellant declaring that it has an easement of way by prescription across certain real property now owned by appellant.

*The servient parcel*

The parcel now owned by appellant was owned by the Tash family from 1892 until 1962, when Robert Blohm purchased it from the estate of Mrs. Tash. Mrs. Tash leased the property to Alfonso Galeti (a witness at trial) from 1951 to 1961; Robert Blohm leased it to James Wood (also a witness at trial) from 1962 to 1968; and Harry Blohm (also a witness at trial), son of Robert, leased it from the Blohm estate from 1968 to 1973. Mr. and Mrs. Alvin Wolpin were caretakers of the property from 1970 to 1973. Appellant purchased the property in 1973 from the Blohm family under the terms of a sale agreement which recited the existence of prescriptive easements, and, prior to said sale, appellant made a visual inspection of the property and the roadway thereon.

*The dominant parcel*

Respondent's parcel of land was established by acquiring title to five different parcels at different times. The Red parcel, the Blue parcel, the Green parcel, the Violet parcel and the Black parcel.

---

*Assigned by the Chairperson of the Judicial Council.

(1) The Red parcel was owned by one Ransom Moore until September 13, 1949, when it was transferred by deed to Corda and nine others without mention of any deeded easement of way. Moore lived in a cabin there but had no access except by use of the Red roadway in question. Mr. Corda, who later became a shareholder in respondent, began using the roadway in 1939 and some of the other shareholders, previously members of a gun club, also used the roadway. Between 1949 and 1959 all 10 gun club members, who were grantees in the 1949 deed, used the roadway and since respondent's incorporation on June 2, 1958, they, as corporation members, have used it. This parcel was transferred by deeds January 2, 1959, and March 30, 1960, to respondent.

(2) The Blue parcel was acquired by Corda and the others by deed dated September 19, 1958, from Clyde Fritch, which deed did not contain any access clause. The only access to this parcel was the same Red road and it was used in the same fashion as the Red parcel. It was transferred to respondent by deed dated May 29, 1962.

(3) The Green parcel was transferred by deed to respondent on January 2, 1959, and in the early 60's, respondent obtained a superior court judgment declaring the existence of a prescriptive easement of way to this parcel across a road on the Black parcel. During 1955-1959 the Red road and Black road were used for access to this parcel, and after creation of respondent corporation and transfer of the various properties to it, the same persons, now as shareholders, continued to use Red road for access to the Red, Blue and Green parcels.

(4) The Violet parcel was acquired by respondent from the United States by patent dated February 22, 1962, and was used for the same purposes, with the same access routes as the other land of respondent.

(5) The Black parcel was acquired by respondent from one Tregea by deed dated October 24, 1969, and was used for the same purposes as the other land, with the same access routes.

The first time respondent's use of the Red roadway was challenged was in May 1974, shortly after appellant moved onto the property, and when appellant saw respondent's members use the roadway. Appellant claimed that respondent had no right of way over the Red road on his property and respondent disagreed.

The Red road was identified as the access road to and from the Red parcel and later to the other parcels. Edwin Tash, George Tash and Harry Blohm identified the roadway as being the one used by all the persons coming through the lower (now Briggs) property. The location had not changed since the Tash's acquired the property. It has an average width of 12 to 15 feet and was used up to 1949 as the only access road to the Red parcel. Thereafter, for 10 years it was the access to the Red and Blue parcels. After 1959, it was used for access by all members of the Corda (later respondent) group during hunting seasons and to do work, picnic and enjoy other activities on the servient parcel.

The usage was always open and never secretive or furtive. No one ever asked the servient property owners or their agents for permission to use the road. George Tash testified that Ransom Moore had a right to use the road "most assuredly" and that the Corda people had a right to "use the road to their property through ours." Harry Blohm testified that his father, Robert, recognized the fact that there were probably prescriptive rights to use the roadway "by usage" and Mrs. Wolpin testified that Mr. Blohm told her that certain persons had a "right of way" to use the road; he never used the word "permission." Robert Blohm told James Wood that among those who had a "right of way" through the property was the Corda group and he never used the word "permission."

During the first meeting with appellant on the servient parcel, Mr. Briggs told a member of the Corda group that he could use the road if he wanted to but that person declined to accept this invitation and instead claimed a "right" to use the road.

Mr. Corda testified that annually the road was maintained by his group and after 1959 both the Red and Black roads were maintained. The corporation brought a D4 Bulldozer for road maintenance, and cars, pickup trucks and similar vehicles were used to travel the roadway.

ISSUES:

I. Did respondent acquire a prescriptive easement over the property of appellant, or was the use of the roadway, not adverse, but permissive, with the servient tenement consenting to its use as a neighborly accommodation?

II. Can respondent corporation maintain a prescriptive easement enjoyed by its predecessors in interest?

III. Is the allowable usage of the prescriptive easement defined by the historical usage thereof?

■ The elements necessary to establish an adverse use are: (a) open and notorious use; (b) continuous and uninterrupted use; (c) hostile to the true owner; (d) under claim of right; and (e) for the statutory period of five years. (Civ. Code, § 1007; Code Civ. Proc., § 321.) "The above elements are designed to insure that the owner of the real property which is being encroached upon has actual or constructive notice of the adverse use and to provide sufficient time to take necessary action to prevent that adverse use from ripening into a prescriptive easement. [¶] ... ■ [T]he burden of proof as to each and all of the requisite elements to create a prescriptive easement is upon the one asserting the claim. [Citations.] [¶] ... ■ [T]he existence or nonexistence of each of the requisite elements to create a prescriptive easement is a question of fact for the court or jury. [Citations.] [¶] ... [O]n appeal, all conflicts must be resolved in favor of the prevailing party and the evidence must be viewed in a light most favorable to him. If there is any substantial evidence to support the judgment, it must be affirmed. [Citations.]" (*Zimmer* v. *Dykstra* (1974) 39 Cal.App.3d 422, 431 [114 Cal.Rptr. 380].)

I

■ In the case at bench, the trier of fact has found the establishment of a prescriptive easement and not mere permissive use. The record is replete with evidence of usage of the Red roadway by the owners of the dominant parcel for many more years than five. There is no evidence of concealment or furtive conduct. There is strong and substantial direct evidence of an open and notorious use of the roadway to get to the property above. There has been a continuous and uninterrupted use of the roadway extended by the specific acts of use. "There has been no break in the essential attitude of mind required for adverse use." (*Zimmer* v. *Dykstra, supra,* 39 Cal.App.3d at p. 432.) Here, whenever the respondent (and its predecessors) needed the roadway from time to time, it made use of it; this is "a continuous use." In *Hesperia Land etc. Co.* v. *Rogers* (1890) 83 Cal. 10, 11 [23 P. 196], recited in *Myers* v. *Berven* (1913) 166 Cal. 484 [137 P. 260], that user used the roadway under a claim of right to do so, and in such an obvi-

ous, open and notorious manner as to constitute an implied notice of claim. (*O'Banion* v. *Borba* (1948) 32 Cal.2d 145 [195 P.2d 10].) Here, the claim of right was from the inception of the use, as the servient owners knew. Thus, the evidence shows open, notorious, continuous and uninterrupted use hostile to the servient owner, under a claim of right from at least 1949 through 1974. ▆ "[W]hen one who claims an easement by prescription offers satisfactory evidence that all the required elements existed, the burden of showing that the use was merely permissive shifts to the owner of the land." (*Chapman* v. *Sky L'Onda etc. Water Co.* (1945) 69 Cal.App.2d 667, 678 [159 P.2d 988].) ▆ This Briggs has failed to do. No permission was ever asked for nor was any given; no one ever questioned the right of the "users" to use the road. Respondent and its predecessors treated the roadway "as [its] own." (*LeDeit* v. *Ehlert* (1962) 205 Cal.App.2d 154, 163 [22 Cal.Rptr. 747].) The prescriptive right to use the road was acquired.

## II

▆ When a prescriptive easement has been acquired for a dominant parcel and such parcel is conveyed, the easement passes to the transferee.* Respondent is a California corporation, duly organized, in good standing and existing. It has the power to sue and be sued. (Corp. Code, § 207 et seq.; *Cogswell* v. *Bull* (1870) 39 Cal. 320.) It is a legal person and enjoys the same prescriptive easement as any other person. It is clear that a utility company can enjoy a prescriptive easement. (*Yankee Jim's Union Water Co.* v. *Crary* (1864) 25 Cal. 504.) For example, the members of a country club, or of an Indian tribe can gain prescriptive rights for their respective groups. (*MacDonald Properties* v. *Bel-Air Country Club* (1977) 72 Cal.App.3d 693 [140 Cal.Rptr. 367]; *Confederated Salish & Kootenai Tribes* v. *Vulles* (9th Cir. 1971) 437 F.2d 177.)

## III

▆ The allowable usage of the prescriptive easement is defined by its historical usage. In *Confederated Salish & Kootenai Tribes, supra*, page 181, the court said "[t]he character and extent of the use (the type and intensity of traffic) determines the nature and extent of the servitude. . . . The only limitation [on use of right of way] is imposed by the

*See *Shonafelt* v. *Busath* (1944) 66 Cal.App.2d 5 at pages 14, 15 [151 P.2d 873]; Civil Code sections 1084, 1104.

use made ... during the statutory period; subsequent use cannot exceed the prior burden."

The trial court's judgment herein, based on its findings, is as follows: "The easements of Plaintiff—may be used all hours of the day and all times of year, and for many purposes, including hunting, pasturing cattle and horses and maintaining cabins, maintaining the roadway, entertaining guests, cutting firewood and having picnics and barbeques [*sic*]." This language appears to be too broad.

A prescriptive easement has been created herein, and is in existence as the "Red" roadway over appellant's property. The character and extent of its use by respondent are limited to that made during the statutory period; subsequent use cannot increase that prior burden. Moreover, such subsequent use must be reasonably related to the use made of the property during the statutory period.

The case is therefore remanded to the trial court for modification of its judgment consistent with this conclusion. As so modified, the judgment is affirmed. Each party to bear its own costs on appeal.

Elkington, Acting P. J., and Newsom, J., concurred.