[No. D012803. Fourth Dist., Div. One. Dec. 16, 1991]

OTAY WATER DISTRICT, Plaintiff and Respondent, v. WARREN W. BECKWITH, JR., Defendant and Appellant.

---

COUNSEL

Herring, Spear & Loftus, C. David Herring and Terry Loftus for Defendant and Appellant.

Hillyer & Irwin and Steven C. Sayler for Plaintiff and Respondent.

---

OPINION

WIENER, Acting P. J.—Plaintiff Otay Water District (Otay) sued adjacent property owners defendants Warren W. Beckwith, Donald F. Wall and others, seeking to quiet title to a prescriptive easement. Defendants cross-claimed for inverse condemnation, ejectment, and fraud. After Otay successfully moved for summary judgment, the court entered judgment against defendants on the complaint and cross-complaint. Only Beckwith appeals contending the court erred in granting Otay a prescriptive easement and in dismissing with prejudice his suit for inverse condemnation. We affirm the judgment.[1]

### FACTUAL AND PROCEDURAL BACKGROUND

On January 12, 1962, Kuebler Ranch, Inc. conveyed to Otay real property located in Otay Mesa. Unknown to the parties, the grant deed covered three additional parcels of property not owned by Kuebler at the time. Kuebler had prepared the grant deed based upon a survey by Boyle Engineering.

Pursuant to the Boyle survey and the Kuebler deed, Otay commenced construction of a reservoir on the property in 1962 completing it in early 1963. The net result was that Otay built the reservoir on a portion of the adjacent properties. In 1963 Otay constructed a chain link fence around the reservoir and in 1974 it constructed a second chain link fence enclosing the 1963 fence, the reservoir, and the property described in the Kuebler Deed.

---

[1]Our decision reflects our rejection of Beckwith's argument that reversal is required because the court failed to state reasons for its granting of the summary judgment motion and the evidence upon which it relied as required by Code of Civil Procedure section 437c, subdivision (g). The court granted the summary judgment motion before Code of Civil Procedure section 437c, subdivision (g) became effective, January 1, 1991, and accordingly, that provision is inapplicable to this case.

Since 1963 Otay has continuously operated the reservoir. The majority of the reservoir and supporting facilities are visible from ground level.

In 1972 Beckwith purchased 10 acres of undeveloped property adjacent to the reservoir, 1.68 acres of which were part of Otay's mistaken property description and upon which the reservoir had been built. Beckwith did not realize the reservoir was built on part of his property until Otay served him with its complaint in 1989.

During the early part of 1984, Otay first discovered there may have been an error in the original Boyle Survey. Otay's engineering department thereafter surveyed the property and confirmed the reservoir was located in part on three parcels not owned by Otay. Consequently, Otay brought this quiet title action against Beckwith and Wall.

In granting summary judgment in favor of Otay on the prescriptive easement issue, the court noted Otay had "open, notorious use, continuous, uninterrupted hostile and exclusive for twenty years or so." The court ruled Otay's use of the easement could "remain exclusive," but "restrict[ed] the use of the property to that as a reservoir."[2]

DISCUSSION

I.

The elements of a prescriptive easement are "(a) open and notorious use; (b) continuous and uninterrupted use; (c) hostile to the true owner; (d) under claim of right; and (e) for the statutory period of five years. (Civ. Code, § 1007; Code Civ. Proc., § 321)." (*Twin Peaks Land Co.* v. *Briggs* (1982) 130 Cal.App.3d 587, 593 [181 Cal.Rptr. 25]; accord *Warsaw* v. *Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564, 570 [199 Cal.Rptr. 773, 676 P.2d 584].)

Beckwith concedes each of these elements have been satisfied here with the exception of "hostile." "The requirement of 'hostility' . . . means . . . the claimant's possession must be adverse to the record owner, 'unaccompanied by any recognition, express or inferable from the circumstances of the right in the latter.' (4 Tiffany, Real Property [3d ed.], 425.)" (*Sorensen* v. *Costa* (1948) 32 Cal.2d 453, 459 [196 P.2d 900]; see *Kerr Land*

---

[2]The order granting summary judgment reads "the prescriptive easement granted to [Otay] in the property . . . shall be for purposes of a reservoir. [Otay] is entitled to exclusive and continuous use of the subject property, provided that the nature, scope and extent of any use does not substantially increase the burden placed upon the servient tenements that existed during the period that the prescriptive easement was acquired, . . ."

*& Timber Co.* v. *Emmerson* (1965) 233 Cal.App.2d 200, 231 [43 Cal.Rptr. 333].)

■ To support its claim that its use of the property was hostile, Otay submitted the declaration of Ralph Chapman, an officer and director of Otay from 1962 through 1983: "during my tenure . . . none of the officers, directors, or board members of OTAY . . . ever recognized the potential claim of the record owners of the subject property, and OTAY . . . built the reservoir with the intent to claim the subject property as its own, regardless of the true boundary lines. The property on which the reservoir and related facilities were built has been used continuously by OTAY . . . under a claim of right and color of title since approximately 1963. OTAY . . . never received permission to build the reservoir and supporting facilities from any of the defendants or their predecessors in interest." Thus, Chapman's declaration establishes Otay's use was under a claim of right and without the permission of the true owner.

Beckwith submitted no evidence contradicting Chapman's statements.[3] Instead he argues the use was not hostile because Otay fenced its property by mistake, relying upon *Berry* v. *Sbragia* (1978) 76 Cal.App.3d 876, 880-881 [143 Cal.Rptr. 318]. The California Supreme Court, however, expressly disapproved the language in *Berry* indicating that adverse possession cannot arise where the use occurred through mistake. (*Gilardi* v. *Hallam* (1981) 30 Cal.3d 317, 322 [178 Cal.Rptr. 624, 636 P.2d 588].) The court explained: "When it appears that the occupier enters the land mistakenly believing he is the owner, possession is adverse unless it is established by substantial evidence that he recognized the potential claim of the record owner and expressly or impliedly reflected intent to claim the disputed land only if record title was determined in his favor. Any implication to the contrary in *Berry* v. *Sbragia, supra,* 76 Cal.App.3d 876, 880 is disapproved." (*Id.* at p. 326.)

Beckwith acknowledges *Gilardi's* disapproval of *Berry,* but argues *Berry* is applicable because of its alternate holding concerning the "agreed boundary" doctrine. The agreed boundary doctrine applies "when there is confusion as to the boundary of land, the occupancy is under a mistake, and the intent is to claim only to the true line." (*Berry, supra,* 76 Cal.App.3d at p. 881.) *Berry* involved a dispute between two adjoining homeowners. The defendants constructed a wooden fence on what they believed to be their own property, and the uncontroverted evidence indicated the defendants "had no intention of claiming any property that did not belong to them," nor

---

[3]We reject Beckwith's untimely evidentiary objection to Chapman's declaration which he raises for the first time in his reply brief. There was no evidentiary error.

did they "mak[e] any use of the fence . . . ." (*Id.* at pp. 880-881.) Thus, the court held that in that case the issue did not concern a prescriptive easement, but instead involved the doctrine of agreed boundaries, which defendants failed to satisfy because there was no showing of the requisite agreement between the parties. (*Ibid.*)

By contrast, in this case, the undisputed evidence shows Otay built the reservoir based upon a belief it owned all the property described in the grant deed, it intended to claim all such property, and there was no apparent confusion as to the boundary line during the statutory period. Thus, the "agreed boundary" doctrine is inapplicable.

## II.

 Beckwith also argues the court erred in granting Otay an exclusive easement because a prescriptive easement, by definition, cannot be exclusive.

 " 'The scope of a prescriptive easement is determined by the use through which it is acquired.' " (*Connolly* v. *McDermott* (1984) 162 Cal.App.3d 973, 977 [208 Cal.Rptr. 796] (quoting *Hannah* v. *Pogue* (1944) 23 Cal.2d 849, 854 [147 P.2d 572]); "[T]he *only* limitation [on future use of a prescriptive easement] is imposed by the use made . . . during the statutory period"; *Twin Peaks Land Co.* v. *Briggs, supra,* 130 Cal.App.3d 587, 594 (italics added); see 5 Miller & Starr, California Real Estate (1989) Easements, § 15.57, p. 538 ["Once a prescriptive easement has been acquired, the location and extent of its use is determined by the use experienced during the prescriptive period"].)[4]

Thus, while an exclusive easement "is an unusual interest in land" (*Pasadena* v. *California-Michigan, etc. Co.* (1941) 17 Cal.2d 576, 578 [110 P.2d 983, 133 A.L.R. 1186]), where, as here, the use during the statutory period was exclusive, a court may properly determine the future use of the prescriptive easement may continue to be exclusive. The court's ruling is particularly justified on this record where Otay submitted uncontested evidence showing Beckwith's proposed recreational use would unreasonably

---

[4]For support of his contention that easements can never be exclusive unless the parties express such intentions, Beckwith cites cases and authorities dealing with easements created by written instruments. (See *Holbrook* v. *Telesio* (1964) 225 Cal.App.2d 152, 154 [37 Cal.Rptr. 153] ["An easement is not to be treated as an exclusive easement unless the parties clearly express an intent to that effect"]; 5 Miller & Starr, California Real Estate, *supra,* § 15.64, p. 559 ["An easement is nonexclusive unless it has been made exclusive by the express terms of the instrument creating it"].) Because we are dealing here with an easement which arose by prescription, those cases are inapposite.

interfere with Otay's right to continue operating a reservoir. Otay established its exclusive use is necessary to prevent potential contamination of the water supply and for other health and safety purposes.

Beckwith argues nonetheless that since an exclusive easement is tantamount to a fee estate, the only mechanism by which Otay could continue exclusive use would be to obtain a fee title. Otay could not obtain such a title by adverse possession because it failed to establish the requisite element of payment of taxes during the statutory period. (See Code Civ. Proc., § 325; *Gilardi, supra*, 30 Cal.3d at p. 321; *Taormino* v. *Denny* (1970) 1 Cal.3d 679, 686 [83 Cal.Rptr. 359, 463 P.2d 711].)

Beckwith is correct that where an easement would create the practical equivalent of an estate, the party must satisfy the elements of an adverse possession, rather than a prescriptive easement. (See *Raab* v. *Casper* (1975) 51 Cal.App.3d 866, 876-877 [124 Cal.Rptr. 590].) Contrary to Beckwith's arguments, however, an exclusive easement is not always "tantamount to a fee estate." The easement granted by the court here, for example, was significantly less than a fee title. The court granted Otay an easement consistent with its historical use, restricting Otay's use of the property for reservoir purposes only and prohibiting Otay from increasing the burden placed upon the servient estates. If Otay stops using the property as a reservoir or increases the burden on Beckwith's property, Otay's easement can be taken away. Such a restricted use is not the same as a fee interest.

## III.

■ Beckwith finally says the court erred in dismissing his inverse condemnation claim and in ruling Otay's use of the easement did not require payment of just compensation.

■ Although it is generally true a governmental entity cannot acquire private property without the payment of just compensation, it is well settled the statute of limitations applies to inverse condemnation claims. (*Ocean Shore R.R. Co.* v. *City of Santa Cruz* (1961) 198 Cal.App.2d 267 [17 Cal.Rptr. 892].) Claims based on the government's taking of private property are subject to a five-year statute of limitations. (See Code Civ. Proc. §§ 318, 319; *Garden Water Corp.* v. *Fambrough* (1966) 245 Cal.App.2d 324, 328 [53 Cal.Rptr. 862]; *Frustuck* v. *City of Fairfax* (1963) 212 Cal.App.2d 345, 373-374 [28 Cal.Rptr. 357]; *Ocean Shore R.R. Co.* v. *City of Santa Cruz, supra*, 198 Cal.App.2d 267, 270-272.) Generally, the limitations period on such inverse condemnation claims begins to run when the governmental

entity takes possession of the property. (See *Ocean Shore R.R. Co.* v. *City of Santa Cruz, supra,* 198 Cal.App.3d at p. 272; see also *Williams* v. *Southern Pacific R.R. Co.* (1907) 150 Cal. 624, 627 [89 P. 599]; *Mosesian* v. *County of Fresno* (1972) 28 Cal.App.3d 493, 500-502 [104 Cal.Rptr. 655].) Where, however, there is no direct physical invasion of the landowner's property and the fact of taking is not immediately apparent, the limitations period is tolled until "the damage is sufficiently appreciable to a reasonable [person] . . . ." (*Mehl* v. *People* ex rel. *Dept. Pub. Wks.* (1975) 13 Cal.3d 710, 717 [119 Cal.Rptr. 625, 532 P.2d 489].)

■ Otay submitted facts showing the taking was complete and apparent by 1963. The uncontested declarations of Otay's chief engineer and a director who served from 1962 through 1983 established Otay built part of its reservoir in 1963 and other supporting facilities on Beckwith's property and Otay had continuously used the reservoir since that time. Moreover, since 1963 the majority of the reservoir and supporting facilities have been visible from ground level and are readily apparent to anyone visiting the property. In fact, codefendant Wall admitted the first time he visited his property he was able to determine the reservoir was partially on his 10-acre parcel. Beckwith testified he bought his parcel at an estate sale without first inspecting the property. When he first went to the property in 1972, Beckwith saw a structure that had water in it, which he assumed was a reservoir. Thus, the reservoir had already been built and was in plain sight at the time Beckwith bought his property.

Given this uncontroverted evidence, Beckwith's claim he was not able to "appreciably determine" the nature and extent of the taking until Otay's complaint was served upon him is insufficient to create a material factual issue. Contrary to Beckwith's contentions, the five-year limitations period is not tolled where, as here, the taking was immediately apparent and could be seen by a reasonable person inspecting the property. Thus, Beckwith's inverse condemnation claim, first brought in June 1989, was beyond the statutory limitations period.

Beckwith alternatively contends that because the government has "wholly taken [his] property," the applicable statute of limitations cannot begin to run until the time that all elements of adverse possession remain unsatisfied. He says that because the payment of taxes by the claimant is a necessary element of adverse possession (Code Civ. Proc., § 325) and because Otay has not yet been able to satisfy that requirement, the statute of limitations has not yet begun to run. As stated earlier, however, this is not a case in which Otay was required to satisfy the elements of adverse possession since the easement is not tantamount to a fee estate. We therefore reject Beckwith's argument.

## DISPOSITION

The judgment is affirmed.

Benke, J., and Froehlich, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 12, 1992.