Filed 9/19/14  Cobb v. 330 Townsend CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| MICHAEL A. COBB et al., | D065615 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. CIVRS1001261) |
| 330 TOWNSEND LLC, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, Janet M. Frangie, Judge.  Affirmed.

Morris & Stone and Aaron P. Morris for Plaintiffs and Appellants.

Lobb & Cliff and Paul Cliff for Defendant and Appellant.

This litigation concerns a dispute over the interpretation of the covenants, conditions and restrictions (CC&R's) governing a commercial office building project comprised of three separate parcels and giving the parcel owners a reciprocal easement to park on each other's property.  The owner of the middle parcel, Michael A. Cobb (Cobb),

contends that he has the right to charge the owners of the other two parcels for parking on his property. Respondent 330 Townsend LLC (330 Townsend), the owner of one of the other parcels, contends that it does not have to pay anything to Cobb. After a bench trial, the trial court concluded that Cobb does not have a right to charge for parking. Cobb, together with his wife, Kathleen S. Cobb (Kathleen) (together, the Cobbs), appeal from that judgment.

330 Townsend cross-appeals as to one issue presented by its cross-complaint. Specifically, 330 Townsend contends that the trial court erred in concluding that 330 Townsend did not establish a prescriptive easement requiring Cobb to reconstruct a trash enclosure on Cobb's property that 330 Townsend used before Cobb removed it.

On the issues presented, we conclude that substantial evidence supports the trial court's judgment on both the Cobbs' complaint and 330 Townsend's cross-complaint, and accordingly we affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

In the 1980's, real estate developer James Barton planned to develop an approximate 13-acre parcel of land in Rancho Cucamonga into an office building complex that would eventually comprise four office buildings and one parking structure.

In approximately 1984, Barton constructed an 80,000-square-foot office building, now known as Barton Plaza, followed in approximately 1986 by a second identical office building, now known as City Center Plaza.

As of 1986 and continuing to the present day, the land comprising the 13 acres that Barton was developing was broken into three separate parcels on the applicable parcel map. The Barton Plaza office building is located on "Parcel 1," which is on the northwestern portion of the 13 acres. The City Center Plaza office building is located on "Parcel 3," which is on the northeastern portion of the 13 acres. "Parcel 2" comprises approximately eight acres of land that sits between Parcel 1 and Parcel 3 and does not have any buildings on it.

Barton intended to continue to develop the project, eventually building two more office buildings and a parking garage on Parcel 2. As part of that future development, Barton intended to eventually divide Parcel 2 into three parcels. Because of financing problems, Barton lost ownership of the project, and the remaining office buildings and parking garage were never built. Therefore, Parcel 2 remains substantially undeveloped, containing only a paved parking area, driveways, landscaping and a vacant lot.

Barton Plaza (Parcel 1) is currently owned by 330 Townsend, who bought it in 2001. Civic Center Plaza (Parcel 3) is currently owned by the Cobbs who bought it in 2003. Parcel 2 (the substantially undeveloped lot) is owned by Cobb, who bought it in April 2009.

To govern the office building project, Barton adopted CC&R's in 1983 around the time he was building the first structure. Amended CC&R's were adopted in 1986 when the second building was added (the Amended CC&R's). The Amended CC&R's continue in force, governing Parcel 1, 2 and 3. The main issue in this litigation concerns the

3

parties' disputed interpretation of the provision in the Amended CC&R's creating a reciprocal parking easement between the parcel owners.

Parcel 1 and Parcel 3 each contain approximately 105 parking spaces available to the tenants of Barton Plaza and City Center Plaza, respectively, but those parking spaces are not sufficient to meet the parking needs of those buildings. Accordingly, the tenants of those buildings also utilize the parking spaces on Parcel 2. It is undisputed that municipal law requires that an 80,000-square-foot office building have a total of 320 parking spaces available to it. Barton Plaza and City Center Plaza are able to comply with that requirement only if each building has access to approximately 215 parking spaces on Parcel 2.

There is no dispute that the Amended CC&R's give the owners of Parcel 1, Parcel 2 and Parcel 3 a reciprocal easement for parking on each other's property. However, it is unclear whether, as the owner of Parcel 2, Cobb has the right to *charge* the owners of Parcel 1 and Parcel 3 for the approximately 215 parking spaces that they each need on Parcel 2. The specific disputed provision in the Amended CC&R's states:

> "Declarant hereby reserves to itself, its successors and assigns and to future Parcel Owners the following easements: . . . [¶] . . . [¶] (c) Reciprocal easements to use each and all of the parking spaces on the Parcels, which parking spaces are indicated by striping or are otherwise marked subject, however, to Declarant's right to assign parking spaces and charge for such spaces . . . ."

4

The Amended CC&R's expressly define the term "Declarant" as the three entities controlled by Barton who were the owners of Parcel 1, Parcel 2 and Parcel 3 at the time the Amended CC&R's were adopted.[1]

Among the other provisions in the Amended CC&R's is a section dealing with the cost of maintaining the "common area," which is defined in the Amended CC&R's as "that outdoor portion of the Property from and including the facade of the Buildings outward, and all portions of the Property generally made available for sidewalks, landscaping, pedestrian and vehicular access, ingress and egress, and parking." The Amended CC&R's state that the parcel owners shall be responsible for the cost of maintaining the common area.

In 1993 the entities who owned Parcel 1, Parcel 2 and Parcel 3 entered into an agreement to resolve certain disputes concerning the cost of maintaining some portions of Parcel 2, including the parking areas and driveways ("Agreement Regarding Common Area Expenses"). The parties stated that they wished to resolve all pending disagreements concerning that area of Parcel 2 and to define with certainty the obligations of the parties on a going-forward basis with respect to the expenses for that area. Accordingly, the agreement set forth a list of specific applicable expenses, including electrical costs, irrigation, lot sweeping and landscaping, and it prorated the respective parcel owners' financial responsibility for those expenses.

---

[1] Specifically, those entities were Rancho Cucamonga Business Park Equities, Rancho Cucamonga Business Park Equities I, and Rancho Cucamonga Business Park Equities V. Barton was the general partner of each of the entities.

Apart from the Agreement Regarding Common Area Expenses, the record contains no evidence about any payments made between the owners of Parcel 1, Parcel 2 and Parcel 3 before 330 Townsend acquired Parcel 1 in 2001.[2] The record shows that from 2001 through 2007, 330 Townsend paid $300 per month to the owner of Parcel 2. An invoice from 2001 describes the $300 payment as being for "parking lot rental." 330 Townsend's managing partner, Abol Hosseinioun, testified at trial that he believed the $300 monthly payment was for maintenance and upkeep of the parking area.

In 2007 (prior to Cobb's purchase of Parcel 2 in 2009), the owner of Parcel 2 sent notices to 330 Townsend and Cobb (as an owner of Parcel 3) that "the rent for the parking areas will increase to $2,500." 330 Townsend had recently spent $39,000 on its own initiative to resurface the parking lot on Parcel 2, and the owner of Parcel 2 stated that it would credit the $39,000 to the $2,500 monthly parking rent, making the next $2,500 payment due in December 2008.

When Cobb acquired Parcel 2 in 2009, 330 Townsend had not paid the $2,500 due to the previous owner of Parcel 2 since December 2008, and the previous owner of Parcel 2 assigned to Cobb its right to collect that amount from 330 Townsend. Accordingly, in May 2009, Cobb sent 330 Townsend a notice requiring it to pay $13,000 in overdue rent in three days or surrender the premises. 330 Townsend made payment of the $13,000.

---

[2]     Barton testified that when he was involved in the project, there was no charge for parking between the entities that he controlled.

At the time Cobb acquired Parcel 2 in 2009, he also gave 330 Townsend notice that he would be increasing the rent for parking on Parcel 2 to $22,500 per month.[3] 330 Townsend refused to pay.

The Cobbs commenced this litigation in February 2010 against 330 Townsend. The First Amended Complaint alleges causes of action for (1) declaratory relief as to whether Cobb has the right under the Amended CC&R's to charge for parking on Parcel 2; (2) "[c]ancellation of [w]ritten [a]greement," relating to the Amended CC&R's; (3) rescission relating to the Amended CC&R's; and (4) a common count for payment of rent due. 330 Townsend filed a cross-complaint seeking (1) to quiet title to its easement; (2) declaratory relief; (3) injunctive relief; and (4) an accounting.

The trial court held a bench trial in June 2011. The witnesses at trial were Barton, Cobb, Hosseinioun, and a real estate appraiser called by 330 Townsend. Barton testified about the history of the office building development on the property and about his intent in adopting the Amended CC&R's. According to Barton, his attorney drafted the Amended CC&R's at his direction, and he intended that subsequent property owners would be able to charge for parking.

---

3    As of January 2011, Cobb reduced the monthly parking lot rent to $13,500 because of what he perceived as a drop in the fair market value of the property and because 330 Townsend had lower tenant occupancy in Barton Plaza. Cobb also testified that, as owner of Parcel 2, he charges himself and Kathleen as owners of Parcel 3, the same monthly parking rent that he charges 330 Townsend. The trial court stated, in accordance with the stipulation of the parties, that it was adjudicating Cobb's right to charge for parking under the terms of the Amended CC&R's as to *both* Parcel 1 *and* Parcel 3, as the rights were reciprocal and identical as to all the parcels and all the necessary parties were before the court.

The trial court issued a statement of decision concluding, based on the Amended CC&R's and the extrinsic evidence presented at trial, that Cobb was not entitled to charge the owners of Parcel 1 and Parcel 3 for parking on Parcel 2. The trial court specifically stated that it did not find Barton's testimony on that issue to be credible, in part because (1) Cobb had paid Barton $5,000 for his testimony; (2) Barton admitted that he was not the actual drafter of the language at issue in the Amended CC&R's; and (3) Barton acknowledged that he planned to create subsequent versions of the CC&R's before the project was completed, but he lost control of the project. Interpreting the Amended CC&R's based on all of the evidence before it, the trial court decided that only the "Declarant" as defined in the Amended CC&R's, and not any subsequent property owner, could charge for parking on Parcel 2.

Relevant to an issue in 330 Townsend's cross-complaint, 330 Townsend presented evidence at trial that it had used a trash enclosure located on Parcel 2, but that Cobb had destroyed the trash enclosure in 2010 in retaliation for 330 Townsend removing some trees from Parcel 2. 330 Townsend argued at trial that it had established the requirements for a prescriptive easement as to the trash enclosure and, on that basis, the trial court should order Cobb to rebuild the trash enclosure. In its statement of decision, the trial court stated that 330 Townsend had not met its burden to establish the requirements for a prescriptive easement concerning the trash enclosure.[4]

---

4    The Cobbs have filed an opposed motion to augment the appellants' appendix. The documents consist of the Cobbs' request for a statement of decision, and objections filed by the parties to a proposed statement of decision, and a proposed judgment. In the

8

The Cobbs appeal from the judgment, arguing that the only reasonable interpretation of the Amended CC&R's is that the owner of Parcel 2 has a right to charge the owners of Parcel 1 and Parcel 3 for parking on Parcel 2.  Townsend cross-appeals from the trial court's ruling that it did not establish a prescriptive easement requiring Cobb to rebuild the trash enclosure.

## II

## DISCUSSION

A.    *The Trial Court's Ruling That Cobb Does Not Have the Right Under the Amended CC&R's to Charge for Parking Is Supported by Substantial Evidence*

1.    *Standard of Review*

Before considering the merits of the Cobbs' challenge to the trial court's interpretation of the Amended CC&R's, we discuss the applicable standard of review. Both parties agree that the substantial evidence standard of review applies to the trial court's interpretation of the Amended CC&R's.  As we will explain, we agree.

When a trial court interprets a contract without the aid of extrinsic evidence, the appellate court reviews the trial court's contractual interpretation under a de novo standard and makes an independent determination of the meaning of the contract. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865.)  However, "where extrinsic evidence has been properly admitted as an aid to the interpretation of a contract and the evidence conflicts," we apply a more deferential standard of review under which

interest of having a more complete record of the trial court proceedings before us on appeal, we grant the motion to augment.

9

"a reasonable construction of the agreement by the trial court which is supported by substantial evidence will be upheld." (*In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 746-747.) "[W]hen, as here, ascertaining the intent of the parties at the time the contract was executed depends on the credibility of extrinsic evidence, that credibility determination and the interpretation of the contract are questions of fact that may properly be resolved by the [finder of fact.]" (*City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 395.) "When the competent parole evidence is in conflict, and thus requires resolution of credibility issues, any reasonable construction will be upheld as long as it is supported by substantial evidence." (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1166 (*Winet*).)

Here, as the Amended CC&R's are unquestionably ambiguous on the subject of whether the current owner of Parcel 2 may charge the other parcel owners for parking, the trial court properly considered extensive extrinsic evidence and made credibility determinations to interpret the Amended CC&R's. (*Winet*, *supra*, 4 Cal.App.4th at p. 1165 [extrinsic evidence is properly considered to interpret a contract when the contract is determined to be ambiguous].) That evidence included Barton's testimony about the history of the project, a real estate appraiser's testimony about the practice of charging for parking in the Rancho Cucamonga area, and testimony from Cobb and Hosseinioun about the circumstances concerning the applicable parcels. (See *Canaan Taiwanese Christian Church v. All World Mission Ministries* (2012) 211 Cal.App.4th 1115, 1124 [" 'The factual context in which an agreement was reached is . . . relevant to establish its meaning unless the words themselves are susceptible to only one

10

interpretation.' "].)  We therefore will affirm any reasonable interpretation of the Amended CC&R's by the trial court if supported by substantial evidence.

2. *The Trial Court's Interpretation Is Supported by Substantial Evidence*

a. *The Trial Court Was Within Its Discretion as Finder of Fact to Make a Negative Credibility Determination Regarding Barton's Testimony*

One of Cobb's central arguments is that Barton's testimony on the intended meaning of the Amended CC&R's was purportedly so strong, convincing and uncontradicted, that it should have been credited by the trial court.  Cobb further contends that if Barton's testimony was credited, there would have been no reasonable basis for the trial court to have concluded that the Amended CC&R's do not give Cobb the right to charge for parking.

We disagree for the fundamental reason that it was the trial court's role as the finder of fact to decide whether it found Barton to be a credible witness, and it is not our role to second-guess that determination.  (*People v. Jones* (1990) 51 Cal.3d 294, 314 [in review for substantial evidence, "it is the exclusive province of the trial judge or jury to determine the credibility of a witness," and "we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder"].)

Further, even though the trial court was not required to explain the basis for its negative credibility determination, the trial court gave a reasonable and persuasive explanation for its rejection of Barton's testimony about whether the Amended CC&R's give the owner of Parcel 2 the right to charge for parking.  As the trial court explained,

11

Barton's credibility was called into question because he admitted both that he had been paid by Cobb to testify for him and that he did not personally draft the Amended CC&R's or focus on the exact language at issue in this case.

b.   *The Text of the Amended CC&R's Provides Substantial Evidence for the Trial Court's Interpretation*

In his challenge to the trial court's interpretation of the Amended CC&R's, Cobb argues that even under the substantial evidence standard of review, the trial court's interpretation is flawed because it is not a *reasonable* construction. (*In re Marriage of Fonstein*, *supra*, 17 Cal.3d at pp. 746-747 ["a *reasonable* construction of the agreement . . . which is supported by substantial evidence will be upheld" (italics added)].) Cobb argues that the *only* reasonable construction of the Amended CC&R's is that a subsequent owner of Parcel 2 becomes the successor in interest to the right of the "Declarant" to charge for parking as set forth in the Amended CC&R's.

As the parties, the witnesses and the trial court all acknowledged to differing degrees, the language of the Amended CC&R's is far from clear. Indeed, after closely focusing on the contractual language, it is safe to conclude that the Amended CC&R's were not drafted with great attention to detail, and it appears that the drafters did not have clearly in mind how the Amended CC&R's would apply several years in the future when the original parcel owners were no longer involved. However, as we will explain, in light of the interpretory challenges presented by the Amended CC&R's, the trial court arrived at a reasonable contractual interpretation supported by the language of the Amended

12

CC&R's, the extrinsic evidence presented at trial, and the canons of contractual interpretation.[5]

It is well established that CC&R's are to be interpreted by the same rules as other contracts. (See *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 240; *Chee v. Amanda Goldt Property Management* (2006) 143 Cal.App.4th 1360, 1377.) "Any contract must be construed as a whole, with the various individual provisions interpreted together so as to give effect to all, if reasonably possible or practicable. . . . Courts must interpret contractual language in a manner which gives force and effect to *every* provision, and not in a way which renders some clauses nugatory, inoperative or meaningless. . . . The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. . . . The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the

_____

[5]     330 Townsend has filed a motion requesting that we impose sanctions on the Cobbs pursuant to Code of Civil Procedure section 907 and California Rules of Court, rule 8.276 for bringing a frivolous appeal for the purpose of harassment and delay. We deny the motion. It is clear from our review of the record that because of the problems caused by the poor drafting of the Amended CC&R's, the resolution of the issue presented in this litigation is not clear-cut and obvious. There are good faith arguments for both appellants' and respondent's interpretation of the Amended CC&R's, with the outcome of this appeal primarily decided by the applicable deferential standard of review. The appeal is not frivolous, and we do not perceive that the Cobbs have been motivated by an effort to harass or delay.

13

contract; and the subsequent acts and conduct of the parties." (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 473-474, citations omitted.)

The question before us is how to interpret the provision in the amended CC&R's that "Declarant hereby reserves to itself, its successors and assigns and to future Parcel Owners. . . [¶] . . . [¶] (c) Reciprocal easements to use each and all of the parking spaces on the Parcels, which parking spaces are indicated by striping or are otherwise marked subject, however, to Declarant's right to assign parking spaces and charge for such spaces . . . ." The trial court concluded that because the Amended CC&R's expressly define the term "Declarant" to mean the three partnerships controlled by Barton who owned the three parcels at the time the Amended CC&R's were adopted, and because Barton viewed the Amended CC&R's as transitory — to be amended again as the development of the project progressed — the most reasonable interpretation of the Amended CC&R's is that the right to parking is given only to the "Declarant" specifically identified in the Amended CC&R's. For several reasons, the trial court's interpretation is supported by substantial evidence.

First, as the trial court pointed out, the Amended CC&R's specifically define the term "Declarant" to encompass only the three specific entities controlled by Barton who owned Parcel 1, Parcel 2 and Parcel 3: Rancho Cucamonga Business Park Equities, Rancho Cucamonga Business Park Equities I and Rancho Cucamonga Business Park Equities V. Therefore, giving effect to the definition of "Declarant specifically set forth in the Amended CC&R's, the most reasonable interpretation of "Declarant's right to

14

assign parking spaces and charge for such spaces" is that Rancho Cucamonga Business Park Equities, Rancho Cucamonga Business Park Equities I, and Rancho Cucamonga Business Park Equities V have the right to charge for parking. As further evidence that "Declarant" means the *current* parcel owners at the time the Amended CC&R's were adopted, and not *future* parcel owners, the Amended CC&R's specifically make a definitional distinction between the "Declarant" and the term "Parcel Owner," which is defined as "the record holder or holders of title to a Parcel." Consistent with this distinction, several provisions in the Amended CC&R's clearly distinguish between the "Declarant" and the "Parcel Owner."[6]

Second, although the Amended CC&R's contain a general statement that their provisions will survive when successive owners acquire the parcels, they do not state that successive parcel owners will acquire the rights identified in the Amended CC&R's as belonging specifically to the "Declarant" and no other entity. The Amended CC&R's

---

6       For example, the following provisions in the Amended CC&R's distinguish between the "Declarant" and the "Parcel Owner":
        (1) "The Declarant or any Parcel Owner or the successor-in-interest of any Parcel Owner . . . shall have the right to enforce . . . all covenants, conditions, restrictions, and easements . . . ."
        (2) "Failure by the Declarant or by a Parcel Owner to enforce any covenant, restriction, or easement herein contained shall in no event be deemed a waiver of the right to do so thereafter."
        (3) "All rights and remedies of Declarant or the Parcel Owners . . . are cumulative. . . and the Declarant and the Parcel Owners shall have to right to pursue any one or all of such rights or remedies . . . ."
        (4) Remedies to abate a nuisance "may be exercised by Declarant or any Parcel Owner."
        (5) "Any notices to be given to Declarant or any Parcel Owner . . . shall be in writing . . . ."

15

state that "[a]ll of these covenants, conditions, restrictions, and easements, shall constitute covenants which shall run with the land and shall benefit and be perpetually binding upon Declarant and its successors-in-interest and assigns, and all parties having or acquiring any right, title, or interest in or to any of the Property."  In this statement, the "Declarant and its successors in interest," are identified *separately* from "all parties . . . acquiring any . . . title" in the parcels.  Thus, in light of this distinction, although the Amended CC&R's are expressly *binding on* and for the *benefit of* future parcel owners, the Amended CC&R's do not establish that future parcel owners succeed to the *rights* that are specifically afforded only to the "Declarant."[7]

Third, the Amended CC&R's specify that *the duties and obligations* of the "Declarant" must be performed by future parcel owners, but they say nothing about the transfer of the *rights* of the "Declarant" to future parcel owners:  "If Declarant conveys all of its right, title and interest in and to the Property to any partnership, individual or individuals, corporation or corporations, Declarant shall be relieved of the performance of any further duty or obligation hereunder, and such partnership, individual or individuals, corporation or corporations, shall be obligated to perform all such *duties and obligations* of the Declarant."  (Italics added.)  This provision lends support to the

---

7    Cobb contends that the trial court's analysis was flawed and thus not reasonable because it focused only on the meaning of the term "Declarant" in the Amended CC&R's rather than considering whether subsequent parcel owners *succeeded* to the rights of the "Declarant." We do not agree with Cobb's characterization of the trial court's analysis. Based on our review of the trial court's statement of decision, it focused on the same issue that Cobb identifies:  whether future parcel owners succeeded to the right of the "Declarant" to charge for parking.

16

conclusion that the drafters of the Amended CC&R's did not intend to transfer the *right* to charge for parking to future parcel owners, although *other* provisions of the Amended CC&R's were meant to continue in force when the parcels were sold to new owners.

Fourth, as the trial court pointed out, extrinsic evidence shows that Barton viewed the Amended CC&R's as a transitory document, not meant to cover the operation of the project after it was completely developed to comprise four office buildings and a parking garage. As Barton testified, he contemplated that new CC&R's would be adopted as the development of the project progressed. Because the Amended CC&R's were expected to have relevance only during the limited time period when Barton was still involved in the project, it is reasonable to interpret the reference to "Declarant's right to assign parking spaces and charge for such spaces" as referring only to Barton and his partnerships. Had Barton foreseen that he would lose control of the project shortly after adopting the Amended CC&R's and that no revisions to the CC&R's for the project would occur after 1986, he may have paid more attention to specifying the right of *future* parcel owners to charge for parking. However, as the evidence showed, Barton did *not* expect to lose control of the project, and accordingly, the Amended CC&R's do not deal with the right of future parcel owners to charge for parking.

17

Based on all of these considerations, we conclude that substantial evidence supports the trial court's decision that under the terms of the Amended CC&R's, the current parcel owners do not have the right to charge each other for parking.[8]

B.      *Substantial Evidence Supports the Trial Court's Finding That 330 Townsend Did Not Establish a Prescriptive Easement Requiring Cobb to Reconstruct a Trash Enclosure on Parcel 2*

We now turn to 330 Townsend's argument that the trial court erred in rejecting its claim that, pursuant to the doctrine of prescriptive easement, Cobb should be required to rebuild the trash enclosure on Parcel 2 and allow the occupants of Parcel 1 to use it.

We begin by reviewing the relevant evidence presented at trial. The Amended CC&R's state that "[e]ach Parcel shall have its own separate enclosed trash bin which shall be used only by the occupants of that Parcel, unless Declarant otherwise agreed in writing." Hosseinioun presented vague and brief testimony about a concrete trash enclosure that used to be on Parcel 2 and was used by the tenants of Parcel 1 until it was removed. Without specifying any particular time period, 330 Townsend's counsel asked Hosseinioun at trial: "Was there a trash enclosure used by 330 Townsend during the time

_____

[8]      Because we conclude that substantial evidence supports the trial court's interpretation of the Amended CC&R's, we need not, and do not, consider the additional grounds set forth by the trial court and 330 Townsend for rejecting Cobb's claim that he has a right to charge for parking on Parcel 2. Specifically we do not consider whether (1) the Agreement Regarding Common Area Expenses precludes Cobb from charging for parking; (2) Parcel 1 and Parcel 3 have an implied easement to park on Parcel 2 free of charge; and (3) the right to charge for parking is not enforceable because it does not meet the requirements for a covenant running with the land. Further, as the trial court recognized, the issues presented in this litigation do not encompass whether, and to what extent, the current parcel owners have an obligation to reimburse each other for the expenses associated with the Common Area as defined in the Amended CC&R's.

18

you have -- that it has owned the building."  Hosseinioun answered in the affirmative and pointed to the location of the trash enclosure on a map.  The appellate record does not reflect where Hosseinioun pointed on the map or whether he claimed the trash enclosure to be located on Parcel 1 or Parcel 2.  Hosseinioun also testified that he never obtained anyone's consent to use the trash enclosure, that the trash enclosure was no longer there, and that it was removed in November 2010.  The trial court granted a request to strike other testimony by Hosseinioun describing the removal of the trash enclosure.

Cobb's testimony regarding the trash enclosure added a few more details but still did not provide an extensive background.  According to Cobb, there used to be two trash enclosures on Parcel 2.  Cobb had one of the trash enclosures removed in retaliation for Hosseinioun's removal of some of the trees on Parcel 2.  As Cobb described his thinking, "I said, okay, we'll just tear out the trash can because I have no agreement with Hosseinioun . . . about having the trash can."

"The elements necessary to establish a prescriptive easement are well settled.  The party claiming such an easement must show use of the property which has been open, notorious, continuous and adverse for an uninterrupted period of five years."  (*Warsaw v. Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564, 570 (*Warsaw*).)  " 'The requirement of "hostility" . . . means . . . the claimant's possession must be adverse to the record owner, "unaccompanied by any recognition, express or inferable from the circumstances of the right in the latter." ' "  (*Otay Water Dist. v. Beckwith* (1991) 1 Cal.App.4th 1041, 1045.)  "Whether the use is hostile or is merely a matter of neighborly accommodation, however, is a question of fact to be determined in light of the

19

surrounding circumstances and the relationship between the parties." (*Warsaw*, at p. 572.)

Here, although the trial court did not extensively explain its basis for rejecting the prescriptive easement claim, it stated that 330 Townsend "did not meet its burden of proof with respect to its entitlement to a trash enclosure on Parcel 2 under a theory of prescriptive easement." We apply a substantial evidence standard of review in determining whether the requirements for a prescriptive easement are met. (*Warsaw*, *supra*, 35 Cal.3d at p. 570.)

As the evidence regarding the trash enclosure was very sparse, the trial court could reasonably conclude that 330 Townsend did not meet its burden to establish a very basic requirement for a prescriptive easement — that Parcel 1 made use of the trash enclosure for an uninterrupted period of five years. (*Warsaw*, *supra*, 35 Cal.3d at p. 572.) Hosseinioun vaguely testified that a trash enclosure was used by 330 Townsend during its ownership of Parcel 1, but he gave no information about the time period of the use.

Further, the trial court could also reasonably conclude that 330 Townsend had not established that the use of the trash enclosure was hostile to Cobb's property rights. Although Hosseinioun testified that he never expressly asked anyone for permission to use the trash enclosure, the trial court could reasonably assume that Cobb and the previous owner of Parcel 2 had impliedly granted a neighborly accommodation to Parcel 1 to allow use of the trash enclosure, especially since Parcel 1 and Parcel 2 both belonged to a common development and shared access to a "common area," as defined in the Amended CC&R's.

20

It is also significant that the remedy 330 Townsend seeks is more than merely an easement permitting *access* to Parcel 2. In effect, 330 Townsend seeks a *mandatory injunction* requiring Cobb to *rebuild* the trash enclosure that he removed from his own property. Although "there is extensive authority standing for the proposition that a court of equity may, in a proper case, issue a mandatory injunction for protection and preservation of an easement," that doctrine is usually applied in a case where a party seeks an injunction *removing* a structure that is obstructing access to an easement. (*Warsaw*, *supra*, 35 Cal.3d at p. 572.) Here, 330 Townsend does not seek removal of a structure, but rather an order requiring that a structure be rebuilt. Further, when a party seeks a mandatory injunction in connection with a prescriptive easement, "the determination as to whether such remedy is appropriate is within the sound discretion of the trial court." (*Ibid*.) In light of the clear provision in the Amended CC&R's stating that "[e]ach Parcel shall have its own separate enclosed trash bin which shall be used only by the [o]ccupants of that Parcel," it was well within the trial court's discretion to decline to issue a mandatory injunction requiring Cobb to rebuild a trash enclosure for the use of Parcel 1 and instead to require Parcel 1 to supply its own trash enclosure.

DISPOSITION

The judgment is affirmed, and 330 Townsend's motion for sanctions is denied.

The parties are to bear their own costs on appeal.


                                                                    IRION, J.

WE CONCUR:


BENKE, Acting P. J.


O'ROURKE, J.